

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 AUG 17 PM 3: 36

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, **Plaintiff** | § § § § | CIVIL ACTION: SECTION: JUDGE: | 03-1605 R VANCE |
| *versus* | § § § | | |
| E.I. DU PONT DE NEMOURS & CO. **Defendant** | § § | MAG. NUMBER: MAGISTRATE: | 4 WELLS ROBY |

## EEOC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

___ Fee_____
___ Process ____
_X_ Dktd____
___ CtRmDep____
___ Doc. No._____

NOW INTO COURT, through undersigned counsel, comes Plaintiff, the United States Equal Employment Opportunity Commission ("Commission" or "EEOC"), and files its Motion for Partial Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth more fully in the accompanying Memorandum in Support, the Court should enter partial summary judgment in favor of the EEOC on the issue of liability.[1]

The EEOC has brought this case under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.,* ("ADA") to redress injuries to Laura Barrios ("Barrios" or "Charging Party") by E.I. Du Pont de Nemours & Co. ("Defendant" or "DuPont"). DuPont admits that it fired Ms. Barrios solely for the reason that it determined that she could not walk and, therefore, allegedly could not evacuate. The decisionmaker, Plant Manager Joe Internicola, admits that as soon as its plant physician placed the medical restriction of no walking on the site on Ms. Barrios, the final decision that Ms. Barrios could not be accommodated and that she had to be terminated had been made. Internicola admits that he spent *no time thinking* about whether Ms. Barrios could be accommodated. Internicola admits that he recalls having *no discussions* with any DuPont official concerning whether Ms. Barrios could be accommodated. Thus, Internicola admits that he terminated the employment of an employee based on nothing other than the knowledge that she could not walk. This is as clear an example of termination because of disability, by admission, as is possible. Moreover, DuPont's Human Resources Manager, Monk Ordeneaux, admits that Ms. Barrios is in fact capable of safely evacuating by walking. Thus, DuPont cannot possibly establish a direct threat defense.

---

[1]    On behalf of Laura Barrios, the Commission seeks compensatory and punitive damages, and equitable relief in the form of backpay, lost benefits, and reinstatement or front pay. The Commission also seeks additional equitable relief in the form of an injunction and the posting of a notice. Entry of summary judgment on the issue of liability will significantly reduce the time and resources required for trial.

Additionally, it is undisputed that DuPont forced Laura Barrios to undergo a Functional Capacity Evaluation ("FCE") which tested her ability to perform tasks which DuPont had medically restricted her from performing in her job. The law requires all medical examinations and inquiries of current employees to be job-related and consistent with business necessity. 42 U.S.C. 12112(d)(4) . DuPont has admitted that the FCE was a medical examination or inquiry. DuPont has admitted that a medical examination cannot possibly be job-related if it tests an employee's ability to perform tasks which the employer has forbidden the employee to perform in her job. Therefore, no reasonable jury could avoid the conclusion that the FCE violated the ADA. The case law makes clear that, irrespective of disability status, an employee may recover damages caused by an illegal medical examination or inquiry. No reasonable jury could avoid the conclusion that Ms. Barrios was terminated based on the results of the illegal FCE. DuPont affirmatively states that "Barrios' FCE established that she was incapable of walking." Response to Request for Admission # 40. Therefore, in addition to the other bases on which the EEOC is entitled to summary judgment, Rule 56 of the Federal Rules of Civil Procedure requires the entry of a judgment stating that DuPont is liable under Sections 12112(d) and 12112(a) for all damages suffered by Laura Barrios as a result of her termination, which was proximately caused by the illegal FCE.

WHEREFORE, for these reasons and for those set forth more fully in the accompanying Memorandum in Support, Plaintiff prays for the entry of partial summary judgment in the EEOC's favor on the issue of liability.

**ERIC S. DREIBAND**
General Counsel
No Bar Roll Number Assigned

- 2 -

**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned

**KEITH T. HILL**
Regional Attorney
E.D. Bar Roll No. 15200000
**DEBRA M. LAWRENCE**
Supervisory Trial Attorney
No Bar Roll Number Assigned
**MICHELLE T. BUTLER**
Supervisory Trial Attorney
Bar Roll No. 1286

**GREGORY T. JUGE (T.A.)**
Senior Trial Attorney
La. Bar Roll No. 20890
**U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
New Orleans District Office
701 Loyola Avenue
Suite 600
New Orleans, LA  70113
Tel:    (504) 589-3844 (Hill)
        (410) 962-4349 (Lawrence)
        (504) 589-6942 (Butler)
        (504) 589-2663 (Juge)
Fax:    (504) 589-2805

**COUNSEL FOR PLAINTIFF,
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

- 3 -

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel of record for all parties, via United States mail postage prepaid, express delivery, facsimile transmission, hand delivery, and/or email transmission.

SIGNED:     August 17, 2004.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | § | **CIVIL ACTION:** | **03-1605** |
| **OPPORTUNITY COMMISSION,** | § | **SECTION:** | **R** |
| **Plaintiff** | § | **JUDGE:** | **VANCE** |
| | § | | |
| **versus** | § | | |
| | § | | |
| | § | | |
| **E.I. DU PONT DE NEMOURS & CO.** | § | **MAG. NUMBER:** | **4** |
| **Defendant** | § | **MAGISTRATE:** | **WELLS ROBY** |

## MEMORANDUM IN SUPPORT OF
## EEOC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.   BRIEF SUMMARY OF THE FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Summary Judgment Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.   Schemes Of Proof Under The ADA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.   Unlawful termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          1.   Prima Face Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
               a.   Ms. Barrios has a disability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
               b.   Barrios is qualified to perform her job. . . . . . . . . . . . . . . . . . . . . 7
                    (1)   Evacuating was not an essential job function. . . . . . . . . . 7
                    (2)   Ms. Barrios was capable of safely evacuating. . . . . . . . . 8
               c.   Defendant terminated Ms. Barrios because of her disability. . . . 9
          2.   Defendant cannot establish a direct threat defense  . . . . . . . . . . . . . . . . 11
               a.   No significant risk of substantial harm  . . . . . . . . . . . . . . . . . . . 13
               b.   Defendant cannot prove that any remote risk which may
                    have existed was impossible to eliminate
                    by reasonable accommodation. . . . . . . . . . . . . . . . . . . . . . . . . . 15
               c.   Defendant cannot establish an undue hardship. . . . . . . . . . . . . . 17
     D.   Illegal Medical Examination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

On June 5, 2003, Plaintiff, the United States Equal Employment Opportunity Commission ("Commission" or "EEOC"), filed the above-referenced action against Defendant, E.I. Du Pont de Nemours & Co. ("DuPont" or "Defendant") , alleging that it violated the Americans with Disabilities Act of 1990 ("ADA") when it terminated Laura Barrios, a long-term employee. Defendant admits that it fired Ms. Barrios because it determined she could not walk, claiming that she was a direct threat due to the inability to evacuate. However, Defendant also admits that Ms. Barrios is not a direct threat and that she is able to safely evacuate by walking. The Commission submits this Memorandum in Support of its Motion for Partial Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth fully below, the Court should enter partial summary judgment in favor of the EEOC on the issue of liability.

## I.    BRIEF SUMMARY OF THE FACTS

Laura Barrios is a female, age 56, who worked for Defendant from 1981 to 1999 as a lab operator, lab trainer, and lab clerk. Her most recent position with Defendant was that of a secretarial employee, a sedentary job which required minimal physical exertion. At all times relevant, Ms. Barrios performed all of the essential functions of her positions.

Since at least the late 1980's, Ms. Barrios had many physical impairments, including severe scoliosis of the lumbar spine, lumbar disc disease with sciatica, lumbar spinal stenosis with compression neuropathy, cervical spondylosis, and previous cervical disc disease with surgical fusion. As a result of her physical impairments, Ms. Barrios is substantially limited in walking. Her impairments cause her to experience great pain on a chronic basis. She walks with a distinct limp, and she walks substantially slower than an average person. Ms. Barrios's impairments also affect her ability to lift things; for example, she uses two hands to lift a gallon of

milk. Despite these medical limitations, Ms. Barrios performed all of the essential functions of her job. Nevertheless, on June 21, 1999, Defendant required Ms. Barrios to undergo a Functional Capacity Evaluation ("FCE"), which lasted five to six hours and which tested her physical performance of rigorous physical tasks such as climbing, standing for hours on end, lifting more than 20 pounds, straight leg lifts, and overhead work, which tasks were not required of her sedentary clerk position.[1]  Indeed, DuPont had restricted Ms. Barrios from performing these tasks in her job, but required Ms. Barrios to be tested on them.[2] Although Defendant claims it was most concerned about Ms. Barrios's ability to evacuate, that is one thing on which the FCE did not test Ms. Barrios.

Defendant received the results of Ms. Barrios's FCE on July 6, 1999, which rated Ms. Barrios as capable of "light" work but noted "significant instability" while walking heel-to-toe carrying a box of weights back and forth on a 100-foot long line.[3]  The very next day, on July 7, 1999, Defendant judged that Ms. Barrios could not safely take one step on its premises and permanently banned Ms. Barrios from the site. She never worked for DuPont again. The terminating official testified that he decided to end Ms. Barrios's employment based on nothing other than the knowledge that she could not walk on the site. To justify Ms. Barrios's termination, Defendant has asserted that Ms.

---

[1]  Strikingly, DuPont admits that it did not provide the conductor of the FCE, Christine Rangel, with Ms. Barrios's job description until June 30, 1999, nine days after the FCE. Response to Request for Admission # 71.  As such, DuPont made it impossible for Ms. Rangel to test Ms. Barrios on her job functions.

[2]  Disturbingly, DuPont did not provide Ms. Rangel with Ms. Barrios's many permanent medical restrictions. Ordeneaux Deposition, Tab C, at pg. 366, line 4 to 367, line 7. Ms. Rangel informed the EEOC that had DuPont done so, she would not have conducted an FCE which violated Ms. Barrios's medical restrictions.

[3]  Significantly, the "instability" was noted during Ms. Barrios's performance of at least two tasks from which DuPont had restricted her at work.  Moreover, a person's ability to walk heel-to-toe, while carrying a box with weights in it, is not relevant to any function which a secretary could possibly have to perform.

Barrios was a direct threat because of being incapable of safely evacuating due to her inability to walk. However, DuPont's Human Resources Manager has admitted under oath that Ms. Barrios is in fact capable of safely evacuating by walking.

## II.    LAW AND ARGUMENT

### A.    Summary Judgment Standards

Summary judgment is appropriate when there is no dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment is appropriate where no rational trier of fact could find for the non-moving party in light of the record as a whole. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); M & M Supplies & Serv. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 162-63 (4th Cir. 1992)(en banc), cert. denied, 508 U.S. 972 (1993). The evidence set forth herein requires summary judgment in favor of the EEOC on liability.

### B.    Schemes Of Proof Under The ADA

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).   To establish a violation of the ADA, the Commission must show that (1) the employee has a disability, (2) she is qualified for the job in question, and (3) an adverse employment decision was made because of her disability. Hamilton v. Southwestern Bell Telephone Co., 136 F3d. 1047, 1050 (5th Cir. 1998) . Once the *prima facie* case is established, the burden of proof shifts to the employer to show that it did not discriminate on the basis of disability or that one of the defenses set forth in the ADA applies. 42 U.S.C. §12113.

The ADA also proscribes medical inquiries or examinations of employees which are not job-related and consistent with business necessity. 42 U.S.C. § 12112(a), (d). If an employer conducts an illegal medical exam or inquiry, it is liable for all damages available under the ADA resulting therefrom, whether the employee is disabled or not.[4]

### C.    Unlawful termination.

#### 1.    Prima Face Case.

##### a.    Ms. Barrios has a disability.

Under Section 3 of the ADA, "The term disability means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i)(non-exhaustive list.) Standing is also a well-recognized major life activity.[5] Moreover, a person is substantially limited in an activity if he or she is significantly

---

[4]    Armstrong v. Turner Industries, Inc., 141 F.3d 554, 561-62 (5th Cir. 1998) (non-disabled has cause of action for violation of Section 12112 if he suffers injuries as a result); Buchanan v. City of San Antonio, 85 F.3d 196 (5th Cir. 1996); Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221 (10th Cir. 1997) (Section 12112(d) violation applies to non-disabled individuals, summary judgment granted for plaintiff for requiring disclosure of prescription medication); Gonzalez v. Sandoval County, 2 F. SUPP.2d 1442 (D. N.M. 1998) (plaintiff awarded damages for termination resulting from violation of Section 12112(d)); Griffin v. Steeltek, Inc., 160 F.3d 591 (10th Cir. 1998) (non-disabled applicant has cause of action for failure to hire based on illegal medical inquiry in violation of Section 12112(d)); Cossette v. Minnesota Power & Light, 188 F.3d 964 (8th Cir. 1999) (cause of action under Section 12112(d) for illegal medical exam or inquiry exists irrespective of disabled status); Fredenburg v. Contra Costa County Department of Health Services, 172 F.3d 1176 (9th Cir. 1999) (plaintiff need not establish disability in order to prove Section 12112(d) violation for illegal medical examination).

[5]    The Second Circuit has found major life activities to include sitting, standing, lifting,
(continued...)

restricted in the manner or conditions under which she can perform that activity compared to an average person in the general population. 29 C.F.R. §1630.2(j). Defendant has judicially admitted, and it is therefore conclusively established in this litigation, that Ms. Barrios's numerous physical conditions substantially limit her ability to walk.[6] To the same effect, the DuPont plant physician whom Defendant claims restricted her from walking on site altogether testified that Ms. Barrios is substantially limited in walking. Uncontested Material Facts at para. 4. Accordingly, Ms. Barrios qualifies as having a disability under the first prong of the ADA definition.

Ms. Barrios also qualifies as having a disability under the third prong of the definition, since and Defendant clearly regarded her as disabled. Defendant has stated on many occasions in this litigation – more than 20 times – that Ms. Barrios cannot walk, and therefore cannot dispute that she is substantially limited in walking. Uncontested Material Facts at para. 4. Similarly, Defendant determined as of September 24, 1996, that Ms. Barrios was unable to stand more than 10 minutes

---

[5](...continued)
and reaching. See Ryan v. Grae & Rybicki, 135 F.3d 867, 870 (2d Cir.1998) (quoting U.S. Equal Employment Opportunity Commission, Americans with Disabilities Act Handbook 1-27 (1992)); Colwell v. Suffolk Co. Police Dep't, 158 F.3d 635, 642 (2d Cir.1998); see also 29 C.F.R. Pt. 1630 App. Section 1630.2(i) (identifying sitting, standing, lifting, and reaching as major life activities).

[6]    "The doctrine of judicial estoppel precludes a party in a legal proceeding from asserting a position that is contrary to a position taken by that party in the same or a prior proceeding." Zapata Gulf Marine Corporation v. Puerto Rico Maritime Shipping Authority, 731 F. SUPP. 747, 749 (E.D.La.1990). As the Fifth Circuit has explained, pursuant to that doctrine, "a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." Hotard v. State Farm Fire and Casualty Company, 286 F.3d 814, 818 (5th Cir.2002). The purpose of judicial estoppel is " 'to protect the integrity of the judicial process,' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.' " In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir.1999); Martinez v. Bally's Louisiana, Inc., 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention.")

at a time. Ordeneaux Deposition, Tab C, at pg. 333, lines 8-15. The courts have recognized that this represents substantial limitation in a major life activity.[7]   Likewise, Defendant believes that Ms. Barrios is substantially limited in working. On December 2, 1999, Defendant submitted an insurance claim to Aetna Life Insurance company, seeking lifetime total and permanent disability retirement ("T&P") benefits for Ms. Barrios.   Uncontested Material Facts at para. 24.   Thus, Defendant affirmatively has asserted that Ms. Barrios cannot not perform "any gainful work." Under the ADA, a person is substantially limited in working if she cannot engage in a class of jobs or a broad range of jobs in different classes. 29 C.F.R. 1630.2(j)(3). By definition, if one cannot perform "any gainful work," then one is more than substantially limited in working.  As such, Defendant clearly regarded Ms. Barrios as substantially limited in working.

Indeed, in another litigation involving its T&P policy, Defendant conceded that the plaintiff, whom it had approved for T&P disability benefits, was "disabled" within the meaning of the ADA. Thompson v. E.I. DuPont de Nemours & Co., 140 F. Supp.2d 764, 772-73 (E.D. Mi. 2001).  The Thompson court noted, "For purposes of its present motion, Defendant assumes that Plaintiff can satisfy the first, "disabled" prong of this three-part test, by virtue of his hip and back conditions . . . . Indeed, it would be difficult for Defendant to argue otherwise, in light of the conclusion of its officials that Plaintiff should be placed into total and permanent disability retirement." Id.

Likewise, the EEOC's Rehabilitation expert, Douglas Kuylen, has stated that if Ms. Barrios were unable to perform her former lab clerk position – as DuPont contends – then it is highly

_____

[7]      Trobia v. Henderson, 315 F. SUPP.2d 322 (W.D. N.Y. 2004) (limitation of not being able to stand for more than 10 minutes is "substantial"; standing is a major life activity);  Meling v. St. Francis Coll., 3 F. SUPP.2d 267, 273-74 (E.D. N.Y.1998) (plaintiff who could not sit or stand more than ten to fifteen minutes was "substantially limited" in the major life activities of sitting and standing and disabled under ADA).

doubtful that she could do any job in the United States economy. Kuylen Report, Tab H, at 12. Again, DuPont's statements regarding the extent of Ms. Barrios's inability to work logically foreclose DuPont's contesting that Ms. Barrios is substantially limited in that major life activity.

**b.    Barrios is qualified to perform her job.**

As noted, Ms. Barrios was a secretarial employee when Defendant terminated her. Her duties focused on the generation, maintenance, and filing of paperwork. Ordeneaux Deposition, Tab C, at pg. 169, lines 6-16. Indeed, Defendant admits that from the time to she became a clerk in March of 1997 until she was banned from the plant on July 7, 1999, Ms. Barrios had performed all of the essential functions of her job. Ordeneaux Deposition, Tab C, at pg. 258, lines 5-15. It is therefore undisputed that she fulfilled every essential function of her position. Because Ms. Barrios has a disability under the ADA and because she was capable of performing the essential functions of her job, she is a qualified individual with a disability, entitled to the protections of the statute.

**(1)    Evacuating was not an essential job function.**

Defendant takes the position that evacuating was an essential job function. However, Defendant's admission that Ms. Barrios performed all of her essential job functions for more than two years as a lab clerk, without ever having to evacuate, shows that evacuation was not an essential function. The facts admitted by DuPont prove that evacuation was not an essential function.[8]

---

[8]    It is undisputed that Ms. Barrios was not required to evacuate the work premises in 18 years. Ordeneaux Deposition, Tab C, at pg. 143, lines 3-5. Defendant acknowledges that the frequency with which one has to perform a function is relevant to determine whether it is essential and further understands that zero occurrences in 18 years is a very low frequency. Ordeneaux Deposition, Tab C, at pg. 143, line 23 to pg. 144, line 2, lines 16-20. Cite. Moreover, Defendant admits that Ms. Barrios was not hired for expertise in evacuating and that evacuation is a task which can be distributed to other employees. Ordeneaux Deposition, Tab C, at pg. 142, lines 4-9. Ordeneaux Deposition, Tab C, at pg. 141, line 21 to pg. 142, line 3. Defendant concedes that if a function is not the goal for which a job is created, then that function is not essential. Ordeneaux
(continued...)

**(2)    Ms. Barrios was capable of safely evacuating.**

Defendant has admitted that Ms. Barrios is capable of safely evacuating by walking. Ordeneaux Deposition at 201, lines 5-8. Joan W. Stein, an expert in emergency evacuation planning, and Douglas Kuylen, a Licensed Rehabilitation Counselor, have established that Ms. Barrios could evacuate safely, with or without accommodation. See ADA Report, Tab I, and Kuylen Report, Tab H. As evidenced by these reports, Ms. Barrios was capable of evacuating without posing any danger to herself or others. Moreover, it is undisputed that Ms. Barrios did in fact safely perform an evacuation during a December, 2003 entry upon land inspection of the subject facility by the EEOC and its experts. Defendant witnessed that Ms. Barrios successfully evacuated the route to the most distant rally point, without assistance and without falling or otherwise injuring herself. Ordeneaux Deposition, Tab C, at pg. 197, line 19 to 198, line 17.

During this entry upon land, Defendant, apparently concerned about Ms. Barrios's ability to walk and stand, arranged for personnel to be on call in case she needed help. Ordeneaux Deposition, Tab C, at pg. 196, line 22 to pg. 197, line 5. No help was needed. Further, Defendant concedes that Ms. Barrios could have evacuated by virtue of Defendant's placement of grates or bridges over the drainage ditch to which it refers as the "uneven terrain."[9] Uncontested Material Facts at para. 32.

---

[8](...continued)
Deposition, Tab C, at pg. 169, lines 17-22. Indeed, it is undisputed that Ms. Barrios's position as lab clerk was not created for the goal of evacuating, Ordeneaux Deposition, Tab C, at pg. 169, lines 6-22; nor was her position as a secretarial employee. Defendant further concedes that Laura Barrios never held a position the job description for which listed evacuation as an essential function. Ordeneaux Deposition, Tab C, at pg. 364, lines 18-24. As noted, Defendant admits that all these factors are relevant to an essential job function analysis. In short, no reasonable fact finder could conclude, given DuPont's own admissions, that evacuation was an essential job function.

[9]    This "uneven terrain" is the only area which Defendant has identified that it claims Ms. Barrios could not safely navigate due to her walking disability.

Defendant admits that Ms. Barrios could have been accommodated in evacuating by being lifted over the 24-inch wide drainage ditch, after which she could have wheeled herself over the adjacent, level shelled area. Ordeneaux Deposition, Tab C, at pg. 95, lines 12-20. Most importantly, Ms. Barrios demonstrated her ability to evacuate without assistance.

### c.    Defendant terminated Ms. Barrios because of her disability.

Defendant openly admits that it terminated Ms. Barrios because it determined she cannot walk. Joe Internicola, the Plant Manager and decisionmaker, testified under oath that as far as he was concerned, once the plant physician said that Ms. Barrios could not walk on the site, the decision that Ms. Barrios could not be accommodated and that her employment had to end was final. Internicola Deposition at 58, lines 5-19.

Joe Internicola did not talk to the doctor who imposed the medical restrictions. The plant doctor deemed Ms. Barrios to be unsafe to walk *anywhere* on the plant, which includes mostly paved, flat areas outside, and a single-story, level, smooth, tiled work area inside. Internicola considered accommodation impossible as of the moment the doctor said Ms. Barrios could not walk. It is impossible to conceive of a scenario in which an employer more directly admits terminating an employee *because of disability*. DuPont admits that it learned Ms. Barrios could not walk and equated that determination with the inability to be accommodated and the inability to do "any gainful work." This is disability prejudice in its purest, most invidious form; DuPont in effect said: "if you cannot walk, you cannot work."

- 9 -

The EEOC has produced undisputed direct evidence of disability discrimination.[10] Defendant's articulated reason for terminating Ms. Barrios is that she could not evacuate because she could not walk, and was therefore a "direct threat." As such, it is beyond cavil that Defendant terminated Ms. Barrios because of her walking disability.

Additionally, the fact that Defendant terminated Ms. Barrios because of her disability is shown by its more favorable treatment of employees outside her protected class.[11] Defendant admits that it did not fire non-disabled employees who were temporarily more severely mobility-impaired than Ms. Barrios and who posed more of a direct threat in regard to evacuation than did Ms. Barrios. DuPont admits that there have been a number of employees[12] at the subject site who were temporarily limited in the ability to walk. Deposition of Human Resources Manager Ordeneaux at pg. 269, line 15 to pg. 270, line 2. DuPont admitted that all of these persons required assistive devices to ambulate. Id. DuPont further admitted that all of these persons were more severely mobility-impaired than was Laura Barrios, and therefore posed a greater direct threat to themselves

---

[10]    Accord EEOC v. Texas Bus Lines, 923 F. Supp. 965 (S.D. Tex. 1996) (stated reason for failure to hire that plaintiff was a direct threat due to obesity constituted direct evidence of disability discrimination; direct threat defense not based on probable harm and therefore rejected by court).

[11]    A classic paradigm of discrimination involves treating persons outside the protected class more favorably than persons in the protected group. See, e.g., Okoye v. University of Texas Houston Health Science Center, 245 F.3d 507, 513 (5th Cir. 2001). Perhaps the best comparators in a case of disability discrimination are persons with similar impairments as the victim who are not "disabled" within the meaning of the ADA. A temporary impairment which substantially limits a major life activity is not a "disability" under the ADA. See Pryor v. Trane Co., 138 F.3d 1024, 1026 (5th Cir. 1998) ("'[T]emporary, non-chronic impairments of short duration, with little or no longer term or permanent impact, are usually not disabilities.' ")

[12]    The positions of these employees is irrelevant to the issue of similar situation to Ms. Barrios. DuPont asserts that evacuation is an essential job function of all employees at the subject site. Ordeneaux Deposition, Tab C, at pg. 31, lines 10-13.

in terms of evacuation than did Laura Barrios while she worked for DuPont. Ordeneaux Deposition, Tab C, at pg. 273, lines 14-21. DuPont admits that it did not require these individuals to undergo an FCE, as Ms. Barrios was required to do. Ordeneaux Deposition, Tab C, at pg. 270, lines 3-6. DuPont admits that it did not ban any of these employees from the plant, as it banned Ms. Barrios. Ordeneaux Deposition, Tab C, at pg. 270, lines 7-10. Thus, DuPont did not terminate these employees, despite the fact that they were less able to evacuate, and posed a greater direct threat, as compared to Ms. Barrios. There could be no clearer case of disparate treatment of a disabled person compared to non-disabled employees in similar situations. Likewise, the fact that DuPont did not ban or terminate these employees, despite the admission that they posed a greater risk in an evacuation, and despite the admission that an evacuation can happen on any given day,[13] shows beyond question that DuPont's claim that it had to terminate Ms. Barrios due to inability to evacuate is false. Falsity is affirmative evidence of guilt on which a jury may base a finding of discrimination.[14]

## 2.    Defendant cannot establish a direct threat defense.

As noted above, once it is established that an employer has terminated an employee due to disability, the employer can escape liability only by establishing a defense available under the ADA. Defendant's proffered defense is that Ms. Barrios was a direct threat to herself or others due to her inability to evacuate because of her walking disability. An employer may avoid liability for violation of the ADA by proving a "direct threat" defense or an "undue hardship" defense. Section 1630.2(r) of Title 29 of the Code of Federal Regulations provides:

---

[13]    Ordeneaux Deposition, Tab C, at pg. 179, lines 22-24.

[14]    Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2108 (2000).

Direct Threat means a **significant risk** of **substantial harm** to the health or safety of the individual or others that **cannot be eliminated or reduced by reasonable accommodation**.

29 C.F.R. § 1630.2(r) (emphasis added).[15] The United States Supreme Court has held that "The direct threat defense must be 'based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence,' and upon an expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job,' reached after considering, among other things, the imminence of the risk and the severity of the harm portended. 29 C.F.R. § 1630.2(r) (2001)." Chevron U.S.A., Inc. v. Echazabal, 122 S.Ct. 2045, 2053 (2002). Because the Supreme Court places the burden on the employer of having made a "reasonable medical judgment" after an "individualized assessment" considering all the relevant factors, the employer must prove that it has satisfied that burden. The Ninth Circuit Court of Appeals, on remand from the Supreme Court, stated unequivocally, "Because it is an affirmative defense, the burden of establishing a direct threat lies with the employer." Echazabal v. Chevron U.S.A., Inc., 336 F.3d 1023, 1026 (9th Cir. 2003).

In order to meet its burden of proof on the direct threat defense, Defendant must prove **both** that Ms. Barrios was a direct threat to herself or others within the meaning of the ADA, and that such

---

[15]    DuPont's own policies under the ADA state that to show direct threat the "employer must show all of the following:" 1. "a significant risk or high probability of substantial harm." 2. "an identifiable risk that considers the duration of the risk, the nature and severity of the potential harm, the likelihood that the potential harm will occur, and the imminence of the potential harm." 3. "a current risk, not one that is speculative, remote, or based on future risk." 4. "assessment of risk that is based on objective medical evidenced relate to a particular employee." [emphasis in original] DuPont Discovery Documents at pg. 18, Tab B. DuPont further states that a determination of direct threat "must be based on a reasonable medical judgment that relies on the most current medical knowledge and objective evidence, which may include: 1. input from the worker. 2. experience of the worker in previous jobs. 3. documentation from physicians, psychologists, rehabilitation counselors, physical or occupational therapists." Id.

threat could not be reasonably accommodated. 29 C.F.R. 1630.2(r). Moreover, the Interpretive

Guidance on the employment provisions of the ADA specifically states, "**Nor can generalized fears**

**about risks to individuals with disabilities in the event of an evacuation or other emergency**

**be used by an employer to disqualify an individual with a disability.** See Senate Report at 56;

House Labor Report at 73-74; House Judiciary Report at 45. See also Mantolete v. Bolger, 767 F.2d

1416 (9th Cir. 1985); Bentivegna v. U.S. Department of Labor, 694 F.2d 619 (9th Cir.1982)." 29

C.F.R. Pt. 1630 App. Section 1630.2(r) Direct Threat (emphasis added). DuPont's termination of

Ms. Barrios based on nothing more than "generalized fears" is precisely the kind of conduct which

the ADA was passed to punish.

### a.    No significant risk of substantial harm

As noted, Ms. Barrios, as she herself demonstrated during the entry upon land, posed no

danger to herself or others in the context of evacuation. See also ADA Report, Tab I; Kuylen Report,

Tab H. Defendant has admitted that Ms. Barrios can safely evacuate by walking. Uncontested

Material Facts at para. 11. Moreover, as shown herein, Defendant has admitted that numerous

persons who were not "disabled" within the meaning of the ADA – *i.e.*, temporarily disabled persons

– were more severely mobility-impaired than Ms. Barrios and were not required to undergo an FCE

or banned from the plant. Uncontested Material Facts at para. 36. Defendant admits that these

people represented more of a direct threat than did Ms. Barrios when she worked for Defendant.

Ordeneaux Deposition, Tab C, at pg. 273, lines 14-21. The "direct threat" defense is still further

disproved by the fact that Defendant did not terminate non-disabled employees who were more

severely mobility-impaired than Ms. Barrios, as noted above. To the same effect, in his deposition

Ordeneaux placed the greatest emphasis, in regard to the issue of evacuation, on the possibility of

a release of a deadly gas. Devastatingly to DuPont's position, Ordeneaux admitted that Ms. Barrios

- 13 -

posed no greater direct threat to herself in the event of a gas release than did any other able-bodied employee of DuPont who worked in her building. Ordeneaux Deposition, Tab C, at pg. 133, line 20 to pg. 134, line 22. This evidence irrefutably establishes that Defendant did not truly regard Ms. Barrios as a "direct threat."

Moreover, Defendant admits that in order to show direct threat, it bears the burden of proving that the alleged risk was "imminent." Ordeneaux Deposition, Tab C, at pg. 127, line 17 to 128, line 24. DuPont admits that there was no such imminent threat. Ordeneaux Deposition, Tab C, at pg. 133, lines 3-19.[16] It further admits that Ms. Barrios was at no greater risk than any other able-bodied employee located in her building concerning a possible gas release. Uncontested Material Facts at para. 36.

DuPont claims that it would not allow Ms. Barrios to evacuate using a golf cart or motorized scooter, because such vehicles might produce a spark which could cause a fire or explosion in the event of a gas release. However, Defendant admits that it did no research whatsoever concerning whether there are motorized vehicles which can be safely used in such circumstances. Ordeneaux Deposition, Tab C, at pg. 137, line 19 to pg. 138, line 6. Defendant further admits that it is unaware of any vehicle ever producing a spark and thereby causing a fire or explosion at any facility. Ordeneaux Deposition, Tab C, at pg. 137, lines 13-18. Thus, any danger of a spark is based on pure speculation, and not on objective, reliable evidence indicating an imminent and significant risk.

---

[16]    In his deposition, Ordeneaux attempted to justify the determination that Laura Barrios was a direct threat because Defendant could not "guarantee" her safety. Ordeneaux Deposition, Tab C, at pg. 93, line 19 to pg. 95, line 11. However, Defendant admits that it did not even bother to test whether a person in a wheelchair could navigate this single known potentially problematic spot. Ordeneaux Deposition, Tab C, at pg. 172, lines 6-17. Defendant further admits it is impossible to guarantee the safety of any employee in an emergency. Ordeneaux Deposition, Tab C, at pg. 164, line 19 to pg. 165, line 13.

Thus, it is beyond question that the potential, speculative danger that there might be a gas release, had nothing to do with Defendant's thought process at the time of the events at issue.

> **b.    Defendant cannot prove that any remote risk which may have existed was impossible to eliminate by reasonable accommodation.**

The decisionmaker, Joe Internicola, admits that he spent no time whatsoever considering whether Ms. Barrios could be accommodated in lieu of being terminated. Uncontested Material Facts at para. 28. He admits that he had no discussions with any DuPont official concerning whether she could be accommodated. Uncontested Material Facts at para. 28.

Reasonable accommodation includes transferring an employee to a vacant position the essential job functions of which she is able to perform. 29 C.F.R. 1630.2(o)(2)(ii). An employer is legally required to consider reassignment of a disabled employee to another position, and failure to do so violates the ADA.[17] If an employer knows that an employee needs an accommodation and fails to engage in an interactive process to develop such an accommodation, the employer has violated the ADA.[18] If an employer fails even to attempt a reasonable accommodation, this too

---

[17]    Hendricks-Robinson v. Excel Corp., 154 F.3d 685 (7th Cir. 1998) ("It is clear from our case law, therefore, that Excel has the duty to consider reassigning its disabled employees to other jobs for which they are qualified."); Burns v. Coca-Cola Enterprises, Inc., 222 F.3d 247 (6th Cir. 2000); EEOC v. Humiston-Keeling, Inc., 227 F.3d 1024 (7th Cir. 2000) ("The reassignment provision makes clear that the employer must also consider the feasibility of assigning the worker to a different job in which his disability will not be an impediment to full performance, and if the reassignment is feasible and does not require the employer to turn away a superior applicant, the reassignment is mandatory."); Smith v. Midland-Brake, Inc., 180 F.3d 1154 (10th Cir. 1999).

[18]    Loulseged v. Akzo Nobel Incorporated, 178 F.3d 731, 736 (5th Cir. 1999) ("Courts interpreting the interactive process requirement have held that when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA."); Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996); Fields v. St. Bernard Parish School Board, 2000 WL 335744 (E.D. La. 2000) (Vance, J.) ("If the employer does not engage in a good faith interactive process, and this
(continued...)

violates the ADA. <u>Criado v. IBM Corp.</u>, 145 F.3d 437 (1st Cir. 1998).

Defendant concedes that Ms. Barrios could have evacuated by virtue of Defendant's placement of grates or bridges over the drainage ditch to which it refers as the "uneven terrain." Uncontested Material Facts at para. 32. Defendant admits that Ms. Barrios could have been accommodated in evacuating by being lifted over the 24-inch wide drainage ditch, after which she could have wheeled herself over the adjacent, level shelled area. Ordeneaux Deposition, Tab C, at pg. 95, lines 12-20. Indeed, there are many ways in which any alleged risk associated with Ms. Barrios's evacuating could have been eliminated by reasonable accommodation, which DuPont admits it did not consider.[19]

-------------------------------------------------------------

[18](...continued)
intransigence leads to a failure to reasonably accommodate an employee, the employer violates the ADA.").

[19]    Defendant admits that it did not ask Ms. Barrios whether there was any means by which she could be accommodated. Ordeneaux Deposition, Tab C, at pg. 364, lines 9-13. Defendant admits that it proposed no accommodations. Ordeneaux Deposition, Tab C, at pg. 308, lines 11-18. Defendant admits that it did not consider a transfer to another facility as an accommodation, despite the fact that Defendant admits to having employed such severely disabled employees as quadriplegics at other company sites. Ordeneaux Deposition, Tab C, at pg. 114, lines 8-16; pg. 317, lines 1-9. Defendant admits that it did not bother to make a phone call to the Job Accommodation Network, despite the fact that Defendant actually helped to found that organization, the sole function of which is to facilitate accommodations of disabled persons. Ordeneaux Deposition, Tab C, at pg. 156, lines 14-24. Defendant admits that it refused Ms. Barrios's offer to show that she could evacuate by walking. Ordeneaux Deposition, Tab C, at pg. 76, line 17 to pg. 77, line 20. Defendant admits that it could have accommodated Ms. Barrios by permitting her to demonstrate her ability to evacuate by use of a wheelchair, and admits that no one considered doing so. Ordeneaux Deposition, Tab C, at pg. 172, lines 6-17. Defendant admits that no one considered whether Ms. Barrios could have been accommodated by use of a cane. Ordeneaux Deposition, Tab C, at pg. 230, lines 1-24. Defendant admits that no one considered whether Ms. Barrios could have been accommodated by use of a walker, and that Ms. Barrios could have been accommodated by use of a stretcher. <u>Id.</u> Defendant admits that it could accommodate Ms. Barrios's alleged inability to evacuate by having people on call to assist her. Ordeneaux Deposition, Tab C, at pg. 196, line 22 to pg. 197, line 5. Defendant further admits that it has at least three or four search and rescue personnel on duty on every shift, who could have assisted Ms. Barrios to evacuate. Ordeneaux
(continued...)

### c.    Defendant cannot establish an undue hardship.

DuPont cannot establish that the means by which it could have eliminated any risks associated with Ms. Barrios's evacuating would have resulted in undue hardship. Section 101(1) of the ADA provides that the employer's establishment of undue hardship excuses its obligations to make reasonable accommodations to a qualified individual with a disability. According to Defendant's own policies, "An undue hardship is an action that requires significant difficulty or expense in relation to the size of the employer, the resources available, and the nature of the operations." DuPont Discovery Documents pg. 24,  Tab B.  Thus, the cost of any proposed accommodation must be assessed in light of the wealth of the employer.  Notably, DuPont's net worth in 2003 was in excess of $9,000,000,000 (9 billion dollars), according to the financial statements DuPont posted on its website.  Tab K. None of the accommodations discussed above would have posed an undue hardship to Defendant. It admits that providing a wheelchair would not have posed an undue hardship.  Ordeneaux Deposition, Tab C, at pg. 103, lines 9-12.  Defendant admits that it would not have posed an undue hardship to have placed grates or bridges  over the drainage ditch. Ordeneaux Deposition at pg.117, line 14 to pg. 118, line 2.

In sum, no reasonable finder of fact could conclude believe Defendant's claim that it terminated Ms. Barrios because she was a direct threat, on which defense it bears the burden of proof. Ordeneaux Deposition, Tab C, at pg. 127, line 17 to 128, line 24.

### D.    Illegal Medical Examination.

As noted above, Section 102 (d)(4)(A) of the ADA, 42 U.S.C. § 12112(d)(4)(A), makes it

---

[19](...continued)
Deposition, Tab C, at pg. 104, line 16 to pg. 105, line 8. Indeed, it has a stretcher and numerous golf carts on the facility.  ADA Report, Tab I.

unlawful for an employer to conduct a medical inquiry of an employee, irrespective of whether the employee is disabled, unless it is job-related and consistent with business necessity. Ordeneaux Deposition, Tab C, at pg. 166, lines 19-25. It is further undisputed that the FCE which Defendant required Ms. Barrios to undergo tested Ms. Barrios on functions which Defendant itself had medically restricted her from performing in 1996, and the same functions which were well outside her job description, including climbing, bending, twisting, stooping, and lifting more than 20 pounds. See FCE report (DuPont Discovery Documents at pg. 368-75), Tab J, and 9-24-1996 restrictions, DuPont Discovery Documents at pg. 383, Tab B; Affidavit of Laura Barrios. Still further, Defendant admits that a medical examination cannot possibly be job-related if it tests an employee on functions that the employee is medically restricted from performing. Ordeneaux Deposition, Tab C, at pg. 168, line 25 to 169, line 5. Likewise, Defendant admits that the FCE was a medical examination or inquiry. Uncontested Material Facts at para. 14. Therefore, no reasonable finder of fact can avoid the conclusion that Defendant's requiring Ms. Barrios to undergo the FCE violated the ADA.

## IV.    CONCLUSION

For all of these reasons, the EEOC respectfully requests that Court enter Partial Summary Judgment in favor of Plaintiff on the issue of liability.

**ERIC S. DREIBAND**
General Counsel
No Bar Roll Number Assigned
**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned

_[signature: Keith T. Hill]_

**KEITH T. HILL**
Regional Attorney
E.D. Bar Roll No. 15200000
**DEBRA M. LAWRENCE**
Supervisory Trial Attorney
No Bar Roll Number Assigned
**MICHELLE T. BUTLER**
Supervisory Trial Attorney
Bar Roll No. 1286

_[signature: Gregory T. Juge]_

**GREGORY T. JUGE (T.A.)**
Senior Trial Attorney
La. Bar Roll No. 20890
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**
New Orleans District Office
701 Loyola Avenue
Suite 600
New Orleans, LA  70113
Tel:    (504) 589-3844 (Hill)
         (410) 962-4349 (Lawrence)
         (504) 589-6942 (Butler)
         (504) 589-2663 (Juge)
Fax:   (504) 589-2805

**COUNSEL FOR PLAINTIFF,**
**U.S. EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel of record for all parties, via United States mail postage prepaid, express delivery, facsimile transmission, hand delivery, and/or email transmission.

SIGNED:        August 17, 2004.

_[signature: Gregory T. Juge]_



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA



| U.S. EQUAL EMPLOYMENT | § | CIVIL ACTION: | 03-1605 |
| OPPORTUNITY COMMISSION, | § | SECTION: | R |
| Plaintiff | § | JUDGE: | VANCE |
| | § | | |
| versus | § | | |
| | § | | |
| | § | | |
| E.I. DU PONT DE NEMOURS & CO. | § | MAG. NUMBER: | 4 |
| Defendant | § | MAGISTRATE: | WELLS ROBY |

---

**EEOC'S STATEMENT OF UNCONTESTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC" or "Commission"), submits this Statement of Uncontested Material Facts in Support of its Motion for Partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

1.    Laura Barrios is a female age 56, who since at least the 1980's, has had severe scoliosis of the lumbar spine, lumbar disc disease with sciatica, lumbar spinal stenosis with compression neuropathy, neurogenic bladder, cervical spondylosis, and previous cervical disc disease with surgical fusion, all of which conditions DuPont was aware at the time it terminated Ms. Barrios. Responses to Request for Admission # 20 - 25, Tab A. All of these ailments are physical conditions which affect one or more of the systems of the body, including the musculoskeletal system, and are therefore "physical impairments" within the meaning of the ADA. Deposition of Dr. Jackson[20] at ____. [Transcript not yet available; deposition taken August 13, 2004].[21]

2.    Severe scoliosis of the lumbar spine is an s-shaped curvature of the lower spine. Ms. Barrios has at least two such s-shaped curves in her spine due to the scoliosis. Deposition of Dr. Jackson at ____. [Transcript not yet available; deposition taken August 13, 2004]. DuPont's former plant physician, Dr. S.J. St. Martin, testified that Ms. Barrios's scoliosis is a physical condition which affects her musculoskeletal system (which is the definition of a physical impairment within the meaning of the ADA). Deposition of Dr. St. Martin at 10, lines 6-18.

---

[20]    John D. Jackson, M.D., a neurosurgeon, is a former treating physician of Ms. Barrios.

[21]    On receipt of the transcript, the EEOC expects to seek leave of the Court to supplement its instant motion for partial summary judgment.

- 1 -

3.      Since at least 1986, Defendant was aware of Ms. Barrios's scoliosis and numerous other back

ailments.  DuPont Discovery Documents at pg. 553,  Tab B.

4.      Defendant has asserted repeatedly — more than 20 times — that Ms. Barrios is unable to

walk,[22] thereby conclusively admitting these she is substantially limited in walking, and that

_____

[22]      (1) "Barrios' FCE established that she was **incapable of walking**."  Response to
Request for Admission # 40; (2) " . . . no person has been employed during the relevant time period
who **required the use of a wheelchair**, except for Ms. Barrios."  Response to Interrogatory # 7; (3)
"However, subject to the exception, please be advised that, **other than Ms. Barrios**, no person
employed at the DuPont facility in LaPlace, Louisiana, during the relevant time period has received
a medical retirement for total and permanent disability due, in part, to the **inability to walk**."
Response to Interrogatory # 9; (4) "However, subject to the objections, please be advised that no
person has been employed at the DuPont facility in LaPlace Louisiana, during the relevant time
period who **requires the use of a wheelchair**, except for Ms. Barrios."  Response to Interrogatory
# 10; (5) "No person has sought employment, or been employed at the DuPont facility in LaPlace,
Louisiana, during the relevant time period with such restrictions [**was unable to walk or used a
wheelchair**], except for Ms. Barrios."  Response to Interrogatory # 11; (6) "The only employee
**permanently disabled from walking** during the relevant time period was Ms. Barrios."  Response
to Interrogatory # 12; (7) "As Ms. Barrios was **restricted from walking**, there existed no reasonable
accommodation which might allow her to evacuate, a responsibility required of every employee."
Response to Interrogatory # 13, Ninth Affirmative Defense; (8) "However, once Ms. Barrios became
**restricted from walking**, no reasonable accommodation could be made which would allow her to
evacuate."  Response to Interrogatory # 13, Fourteenth Affirmative Defense. [Emphases added].
**There are at least ten (10) occasions in his deposition on which Mr. Ordeneaux testified that
Ms. Barrios cannot walk.**  Ordeneaux Deposition, Tab C, at (1) pg. 20, lines 19-24; (2) pg. 21, line
25 to 22, line 3; (3) pg. 22, lines 12-20; (4) pg. 135, lines 6-8; (5) pg. 145, lines 18-20; (6) pg. 151,
lines 20-24; (7) pg. 216, lines 7-11; (8) pg. 262, lines 4-10; (9) pg. 268, lines 8-13; (10) pg. 311, lines
16-19.  Additionally, there are many other occasions when Mr. Ordeneaux testified about DuPont's
having restriction Ms. Barrios from walking on the site.  Mr. Ordeneaux conceded that a medical
restriction is only imposed if necessary based on a medical condition.  Ordeneaux Deposition, Tab
C, at pg. 50, line 19 to 51, line 10.  See also Deposition of Chris Weidner, Human Resources
Superintendent at the time of Ms. Barrios's termination, at 155, lines 2- 6 ("Q:  Laura Barrios had
her employment ended at the DuPont LaPlace facility because  she was unable to walk and therefore
couldn't evacuate, right?  A:  Right.");  Weidner Deposition at 37, lines 13-17 ("Q:  Did you
participate in the decision that Laura Barrios could not work for DuPont any longer due to her
inability to walk?  A:  Yes.").

-2-

DuPont regards her as such.   Further, Dr. S.J. St. Martin, whom DuPont identified as the only doctor who participated in the decision to end Ms. Barrios's employment, testified that Ms. Barrios is substantially limited in walking.   Deposition of Dr. St. Martin at 17, lines 5-8.

5.      Ms. Barrios has a record of being substantially limited in walking and standing.   See DuPont's Permanent Medical Restrictions imposed by Dr. St. Martin on Laura Barrios dated 9-24-1996, DuPont Discovery Documents at pg. 383.   These restrictions state that Ms. Barrios cannot stand for more than 10 minutes at a time.   They also state that Ms. Barrios cannot walk more than 100 feet without stopping for rest.   Dr. St. Martin admits that an average person of Ms. Barrios's age should be able to walk more than a mile without stopping for rest.   Deposition of Dr. St. Martin at 36, lines 5-11.   A mile is more than 5,000 feet.   Thus, Ms. Barrios's has a medical record at DuPont reflecting that she can walk less than 2% as far as an average person without stopping for rest.   A 98% limitation in an activity is more than substantial.   See also Tab N at A124-25, entries in DuPont's medical history for Ms. Barrios, restricting her Barrios from taking a single step on the DuPont site. This DuPont record states that Ms. Barrios is totally unable to walk.

6.      Ms. Barrios began working for DuPont as an operator in 1981 and became a lab trainer in 1986.   Response to Request for Admission # 26, Tab A.

7.      In March of 1997, Defendant transferred Ms. Barrios to the position of laboratory clerk ("the clerk position").   Position Statement of DuPont to EEOC, DuPont Discovery Documents at pg. 6, Tab B.

8.      The clerk position was sedentary. Ordeneaux Deposition, Tab C, at pg. 207, lines 19-21.

        Kuylen Report, Tab H.

9.      Ms. Barrios performed all the essential functions of her job as a clerk throughout her more

        than two years in the position. Ordeneaux Deposition, Tab C, at pg. 258, lines 5-15.

10.     Evacuation of Defendant's facility in case of an emergency was not an essential function of

        Ms. Barrios's clerk position. Ordeneaux Deposition, Tab C, at pg. 141, lines 19-21, pg. 169,

        lines 6-22, pg. 364, lines 18-24; pg. 258, lines 5-15.

11.     Defendant admits that Ms. Barrios is able to safely evacuate her facility by walking in the

        event of an emergency, without accommodation. Ordeneaux Deposition, Tab C, at pg. 201,

        lines 5-8[23]; Ordeneaux Deposition, Tab C, at pg. 197, lines 1-12; Kuylen Report, Tab H ;

        ADA Report, Tab I.

12.     Ms. Barrios was never required to evacuate in 18 years. Ordeneaux Deposition, Tab C, at

        pg. 143, lines 3-5.

13.     In May, 1999, after Ms. Barrios had successfully performed her duties as a clerk for more

        than two years, Defendant's plant physician ordered Ms. Barrios to undergo a Functional

        Capacity Evaluation ("FCE"). DuPont Discovery Documents at pg. 392, Tab B.

---

[23]

5  Q.      If she walked as well every day as
6  you just saw her walk, would you believe her
7  able to evacuate safely?
8         A.    Yes.

- 4 -

14.    The FCE ordered by Defendant for Ms. Barrios is a medical inquiry or medical examination within the meaning of the ADA. Ordeneaux Deposition, Tab C, at pg. 266, lines 19-21.

15.    Among other things, the FCE required Ms. Barrios to climb stairs and to climb a straight ladder, to twist, bend, and carry more than 20 pounds, tasks which Defendant earlier had restricted Ms. Barrios from performing and tasks which were outside her current job description. See FCE report and job description attached thereto. See also Affidavit of Laura Barrios.

16.    The FCE was not job-related. Ordeneaux Deposition, Tab C, at pg. 168, line 25 to 169, line 5.

17.    On July 6, 1999, Defendant received the FCE report, which rated Ms. Barrios as capable of "light" duty under the Dictionary of Occupational Titles. DuPont Discovery Documents at pg. 393, Tab B. DuPont Discovery Documents at pg. 368, Tab B.

18.    "Light" duty is more physically demanding than "sedentary" work, which Ms. Barrios's job as a clerk was. Ordeneaux Deposition at pg. 207, lines 18-24.

19.    The FCE reports statement that Ms. Barrios was capable of light duty shows that she was able to perform her sedentary job. Ordeneaux Deposition, Tab C, at pg. 207, line 25 to 208, line 5.

20.    The ultimate decisionmaker who terminated Ms. Barrios's employment was Joe Internicola, Plant Manager. Ordeneaux Deposition, Tab C, at pg. 232, line 20 to pg. 233, line 5.

21.     On the day after it received the FCE report, July 7, 1999, Defendant restricted Ms. Barrios

        from walking on the site and banned her from the workplace.  Tab N at A124-25; Affidavit

        of Laura Barrios.

22.     Defendant terminated Ms. Barrios based on nothing other than the conclusion that she could

        not walk.  Internicola Deposition at 58, lines 9-19.[24]  Internicola Deposition at pg. 13, lines

        11-15.  Weidner Deposition at 37, lines 13-17.[25]

23.     DuPont asserts that due to her walking limitations "Ms. Barrios posed a threat to herself and

        others, for which no further accommodation could be made."  Response to Interrogatory #

        13.

_____

[24]

1.                                              58
9   Q.  And that the final decision
10  manifested itself in the restriction that
11  Laura Barrios could not walk on the plant?
12      A.  Yes.
13      Q.  So is it fair to say as of the
14  time that the doctor placed that restriction
15  on Laura Barrios, the final decision
16  regarding whether or not Laura Barrios could
17  be accommodated had been made; is that
18  correct?
19      A.  Yes.

        [25]

13   Q   Did you participate in the
14  decision that Laura Barrios could not work
15  for DuPont any longer due to her inability
16  to walk?
17      A   Yes

                              - 6 -

24.    After Defendant banned Ms. Barrios from the work site, Joe Internicola, Defendant's Plant Manager, submitted a claim on December 2, 1999, to its disability carrier, Aetna, asking that Ms. Barrios be ruled "totally and permanently" disabled.   DuPont Discovery Documents at pg. 842; Internicola Deposition at pg. 73-75.   Under Defendant's own policies, "Total and Permanent disability means you are totally disabled by injury or disease and presumably are totally and permanently prevented from doing any gainful work, as determined by DuPont." DuPont Discovery Documents pg. 258.  Defendant therefore regarded Ms. Barrios as unable to do any gainful work.

25.    Once the plant doctor restricted Ms. Barrios from walking, the decision that Ms. Barrios had to be terminated was final.  Internicola Deposition at 58, lines 5-19.

26.    Ms. Barrios was placed on short term disability leave from July 8, 1999, to January 31, 2000. DuPont Discovery Documents at pg. 842.

27.    Internicola terminated Ms. Barrios effective January 31, 2000.  Internicola Deposition at 74, lines 9-13.

28.    Internicola made the decision that Ms. Barrios to terminate Ms. Barrios without spending any time considering whether she could be accommodated, and without discussing possible accommodations with anyone.  Internicola Deposition at 41, lines 2-6; Internicola Deposition at 15, line 23 to 16, line 18.

29.    Defendant offered no accommodation.  Internicola Deposition at 40, line 23 to 41, line 1. Ordeneaux Deposition, Tab C, at pg. 308, lines 11-18.  Defendant did not ask Ms. Barrios

- 7 -

whether there were any means by which she could be accommodated. Ordeneaux Deposition, Tab C, at pg. 364, lines 9-13.

30.    Ms. Barrios proposed numerous means by which any concern of direct threat on DuPont's part regarding evacuating could have been accommodated, but DuPont refused those requests. Ordeneaux Deposition, Tab C, at pg. 362, line 21 to pg. 363, line 12; Ordeneaux Deposition, Tab C, at pg. 363, lines 13-25; pg. 364, lines 1-8; . DuPont admits that Ms. Barrios asked to be permitted to show that she could evacuate safely by walking, which request was denied. Ordeneaux Deposition at pg. 76, line 17 to pg. 77, line 20.

31.    The transfer of an employee to a vacant position as a reasonable accommodation would not have posed an undue hardship to Defendant. Ordeneaux Deposition, Tab C, at pg. 117, lines 17-25. DuPont offers no reason for refusing to consider the possibility of a transfer to a vacant position. Ordeneaux Deposition, Tab C, at pg. 127, lines 13-16.

32.    In regard to Defendant's claim that Ms. Barrios could not have evacuated safely due to "uneven terrain" in the form of a ditch at her plant, it would have imposed no undue hardship to have placed a grate or a number of bridges over the length of the ditch, thereby eliminating the problem of Ms. Barrios's allegedly not being able to safely cross the ditch. Ordeneaux Deposition, Tab C, at pg.117, line 14 to pg. 118, line 2, pg. 224, lines 3-24.

33.    At least three search and rescue personnel are on duty on every shift, whose purpose is to assist injured or immobile persons to get to safety, as needed. Ordeneaux Deposition, Tab C, at pg. 104, line 16 to pg. 105, line 8. As such, it would have imposed no undue hardship

- 8 -

on DuPont to have accommodated Ms. Barrios in evacuating, if she had needed it, through the assistance of search and rescue personnel already on duty.

34.    Defendant failed to conduct an individualized assessment of Ms. Barrios's medical restrictions and to what extent they posed a direct threat to the health and safety of herself and others. Ordeneaux Deposition at pg. 76, line 17 to pg. 77, line 20, pg. 218, line 21-24, pg. 230, lines 1-24; pg. 377, line 11-21. The purported belief that Ms. Barrios was a direct threat was based, literally, on nothing more than the fact that Ms. Barrios was restricted from walking. Internicola Deposition at 58, lines 5-19.

35.    Ms. Barrios's medical restrictions would not have posed a direct threat to the health and safety of herself and others, had she been permitted to remain in her clerk position, with or without a reasonable accommodation. Ordeneaux Deposition, Tab C, at pg. 133, lines 3-19, pg. 309, line 17 to pg. 310, line 14; pg. 232, lines 7-15, pg. 133, line 20 to pg. 134, line 22, pg. 201, lines 5 to 8.

36.    DuPont admits that Ms. Barrios was not a direct threat, conceding that she was no more of a direct threat than non-disabled employees who were not fired. Ordeneaux Deposition, Tab C, at pg. 269, line 15 to pg. 270, line 2; pg. 273, lines 14-21; at pg. 278, lines 3-8; at pg. 273, line 22 to pg. 274, line 2; at pg. 270, lines 3-6; at pg. 270, lines 7-10; pg. 274, lines 6-10. DuPont also admits that Ms. Barrios was no more of a direct threat than any of DuPont's other, able-bodied employees. Ordeneaux Deposition, Tab C, at pg. 133, line 20 to pg. 134, line 22.

- 9 -

**ERIC S. DREIBAND**
General Counsel
No Bar Roll Number Assigned
**JAMES L. LEE**
Deputy General Counsel
No Bar Roll Number Assigned
**GWENDOLYN YOUNG REAMS**
Associate General Counsel
No Bar Roll Number Assigned


_____
**KEITH T. HILL**
Regional Attorney
E.D. Bar Roll No. 15200000
**DEBRA M. LAWRENCE**
Supervisory Trial Attorney
No Bar Roll Number Assigned
**MICHELLE T. BUTLER**
Supervisory Trial Attorney
Bar Roll No. 1286


**GREGORY T. JUGE (T.A.)**
Senior Trial Attorney
La. Bar Roll No. 20890
**U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
New Orleans District Office
701 Loyola Avenue
Suite 600
New Orleans, LA  70113
Tel:    (504) 589-3844 (Hill)
        (410) 962-4349 (Lawrence)
        (504) 589-6942 (Butler)
        (504) 589-2663 (Juge)
Fax:    (504) 589-2805

**COUNSEL FOR PLAINTIFF,
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel of record for all parties, via United States mail postage prepaid, express delivery, facsimile transmission, hand delivery, and/or email transmission.

SIGNED:        August 17, 2004.

- 11 -

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| U.S. EQUAL EMPLOYMENT | § | CIVIL ACTION: | 03-1605 |
| OPPORTUNITY COMMISSION, | § | SECTION: | R |
| Plaintiff | § | JUDGE: | VANCE |
| | § | | |
| versus | § | | |
| | § | | |
| | § | | |
| E.I. DU PONT DE NEMOURS & CO. | § | MAG. NUMBER: | 4 |
| Defendant | § | MAGISTRATE: | WELLS ROBY |

## NOTICE OF HEARING OF
## EEOC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**PLEASE TAKE NOTICE:**

Plaintiff, the United States Equal Employment Opportunity Commission ("Commission" or "EEOC"), will bring on for hearing its accompanying Motion for Partial Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure, in the United States District Court for the Eastern District of Louisiana, 500 Camp Street, New Orleans, Louisiana, 70130, before the Honorable Sarah S. Vance, on the 1st day of September, 2004, at 10:00 o'clock a.m. or soon thereafter as counsel may be heard.

> **ERIC S. DREIBAND**
> General Counsel
> No Bar Roll Number Assigned
> **JAMES L. LEE**
> Deputy General Counsel
> No Bar Roll Number Assigned
> **GWENDOLYN YOUNG REAMS**
> Associate General Counsel
> No Bar Roll Number Assigned
> **KEITH T. HILL**
> Regional Attorney
> E.D. Bar Roll No. 15200000
> **DEBRA M. LAWRENCE**
> Supervisory Trial Attorney
> No Bar Roll Number Assigned
> **MICHELLE T. BUTLER**
> Supervisory Trial Attorney
> Bar Roll No. 1286

- 1 -

_Gregory F. Juge_
GREGORY T. JUGE (T.A.)
Senior Trial Attorney
La. Bar Roll No. 20890
**U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**
New Orleans District Office
701 Loyola Avenue
Suite 600
New Orleans, LA 70113
Tel: (504) 589-3844 (Hill)
(410) 962-4349 (Lawrence)
(504) 589-6942 (Butler)
(504) 589-2663 (Juge)
Fax: (504) 589-2805

**COUNSEL FOR PLAINTIFF,
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on counsel of record for all parties, via United States mail postage prepaid, express delivery, facsimile transmission, hand delivery, and/or email transmission.

SIGNED:     August 17, 2004.

_Gregory F. Juge_

- 2 -

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED