

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


U.S. EQUAL EMPLOYMENT                          CIVIL ACTION
OPPORTUNITY COMMISSION

VERSUS                                         NO: 03-1605

E.I. DU PONT DE NEMOURS                        SECTION: "R"(4)


## ORDER AND REASONS

Before the Court are cross-motions for summary judgment.
For the following reasons, the Court GRANTS the EEOC's motion in
part and DENIES it in part, and the Court DENIES DuPont's motion.

## I.  BACKGROUND

Laura Barrios is a 56 year-old woman with severe scoliosis
of the lumbar spine, lumbar disc disease with sciatica, lumbar
spinal stenosis with compression neuropathy, neurogenic bladder,
cervical spondylosis, previous cervical disc disease with
surgical fusions, and reactive depression.  Barrios has
considerable difficulty walking.  Barrios began to work for
DuPont in its LaPlace chemical plant as a lab operator in 1981.

DATE OF ENTRY
OCT 1 5 2004

In 1986, Barrios became a lab trainer/operator. In March of 1997, DuPont transferred Barrios to the sedentary position of lab clerk under a number of medical restrictions. Specifically, DuPont restricted Barrios from, inter alia, climbing stairs or straight ladders, standing for more than ten minutes at a time, and walking more than 100 feet without rest.

In May of 1999, the DuPont plant physician ordered Barrios to undergo an functional capacity evaluation (FCE). On July 6, 1999, DuPont received the results of the FCE. On July 7, 1999, DuPont restricted Barrios from walking anywhere on the plant site. At that time, she was placed on short-term disability and then on Total and Permanent disability. The EEOC contends that DuPont terminated Barrios because of her disability in walking, in violation of the Americans with Disabilities Act. DuPont responds that the ability to evacuate on one's own by ambulating was an essential function of Barrios's job or a qualification standard required of everyone who worked at the plant. Therefore, DuPont asserts that Barrios's walking restriction meant that she would not be able to safely evacuate the facility in the event of an emergency. Thus, DuPont argues that it was justified in terminating Barrios because she posed a threat to herself and others in her inability to perform the essential job function of evacuating. DuPont contends that it considered

2

accommodating Barrios, but concluded that there was no reasonable way to do so.

The EEOC, on the other hand, submits that evacuating is not an essential function of Barrios's job, and even if it is, Barrios could evacuate safely, either on her own or with accommodations.   Therefore, the EEOC argues that Barrios was qualified to do her job and that she was not a direct threat to herself or others.

Finally, the EEOC argues that the FCE that Dupont administered to Barrios violated the ADA because is was not job-related.   DuPont contends that the FCE was a justified inquiry to determine Barrios's fitness for duty and therefore complied with the ADA.   Both parties now seek summary judgment.

## II.   LEGAL STANDARDS: SUMMARY JUDGMENT AND ADA

### A.   Summary Judgment

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2551 (1986). The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."

3

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of establishing that there are no genuine issues of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir. 1993). A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See Hunt v. Rapides Healthcare System, LLC*, 2001 WL 1650961 (5th Cir. 2001)(citations omitted).

If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2552; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

**B.    The ADA Framework**

The ADA prohibits discrimination against "a qualified individual with a disability because of the disability of such

4

individual in regard to job application procedures, the hiring,
advancement, or discharge of employees, employee compensation,
job training, job training, and other terms, conditions, and
privileges of employment." 42 U.S.C. § 12112(a). At the outset,
the plaintiff must establish a *prima facie* case of a violation of
the ADA. Specifically, the employee must (1) be disabled within
the meaning of the ADA, (2) be "a qualified individual with a
disability," and (3) have suffered an adverse employment decision
because of her disability. *See Hamilton v. Southwestern Bell
Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998).

Once the plaintiff makes a *prima facie* case, the burden
shifts to the employer to show that it did not discriminate on
the basis of disability or that it is entitled to an affirmative
defense under the ADA. *Gowesky v. Singing River Hosp. Sys.*, 321
F.3d 503, 511 (5th Cir. 2003); 42 U.S.C. § 12113. Under the ADA:

> It may be a defense to a charge of discrimination under
> this chapter that an alleged application of
> qualification standards, tests, or selection criteria
> that screen out or tend to screen out or otherwise deny
> a job or benefit to an individual with a disability has
> been shown to be job-related and consistent with
> business necessity, and such performance cannot be
> accomplished by reasonable accommodation, as required
> under this subchapter.

42 § 12113(a). "The term 'qualification standards' may include a
requirement that an individual shall not pose a direct threat to
the health or safety of other individuals in the workplace." *Id.*

5

at § 12113(b). An employee is a direct threat if she poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." *Id.* at § 12111(3). The EEOC has interpreted this provision to apply to threats not only to other individuals, but also to the employee herself. 29 C.F.R. § 1630.2(r); *see also Chevron U.S.A., Inc. v. Echazabel*, 536 U.S. 73 (2002)(concluding that the direct threat to self regulation was a reasonable exercise of the EEOC's authority).

III. THE *PRIMA FACIE* CASE

    A.    Prong 1: Was Barrios "Disabled" Under the ADA?

    An employee may have a "disability" under the ADA in one of three ways. Specifically, the ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The parties do not dispute that Barrios is impaired in walking, and that walking is a major life activity. *See* 29 C.F.R. 1630.2(i)(listing walking among major life activities). The issue here is whether Barrios was *substantially* limited in walking or regarded as such.

    The ADA does not explicitly define "substantially limits," but the EEOC regulations provide the Court with guidance. "Substantially limits" means:

> (i) Unable to perform a major life activity that the
> average person in the general population population can
> perform; or
> (ii) Significantly restricted as to the condition,
> manner or duration under which an individual can
> perform a particular major life activity as compared to
> the condition, manner or duration under which the
> average person in the general population can perform
> the same major life activity.

29 C.F.R. § 1630.2(j)(1). A substantially limiting impairment is
determined with reference to (1) the nature and severity of the
impairment, (2) its duration or expected duration, (3) its
permanent or expected permanent long-term impact. *Id.* at §
1630.2(j)(2); *see also Hamilton*, 136 F.3d at 1050 (referencing
the regulations). To determine whether an individual is
substantially limited in a major life activity, the Court must
conduct an individualized inquiry. *Sutton v. United Air Lines,
Inc.*, 572 U.S. 471, 483 (1999); *Lynch v. Lee*, 2004 WL 1900463, at
*3 (E.D. La. Aug. 20, 2004). The Court must then consider how
well an average person in the general population can perform the
activity. *Lynch*, 2004 WL 1900463, at *3.

> (1)  *Was Barrios Actually Disabled?*

There is no dispute that Barrios's physical conditions,
including her severe thoracic and lumbar scoliosis, impair her
ability to walk. The issue is whether Barrios's impairment
substantially limits her ability to walk. Based on the extensive
summary judgment record before the Court, the Court finds that

7

issues of fact preclude summary judgment on the question of
whether Barrios was substantially limited in walking.  The Court
makes this determination in light of the caselaw under the ADA,
which requires more than moderate difficulty in walking before a
person can be determined to be substantially limited in walking.
*See Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir.
1999)(finding that "[m]oderate difficulty experienced while
walking does not rise to the level of a disability"); *see also
Wynn v. Whitney Holding Corp.*, 220 F.Supp.2d 582, 589-90 (M.D.
La. 2002)(noting that "moderate restrictions" on walking do not
amount to substantial limitation).  For example, walking with a
limp or walking slower than others does not necessarily rise to
the level of substantial limitation.  *See, for example, Talk*, 165
F.3d at 1025 (finding that walking significantly slower than
others and walking with a limp did not constitute a substantial
limitation); *Stone v. Entergy Svs., Inc.*, 1995 WL 368473, at *4
(E.D. La. June 20, 1995)(finding that inability to walk briskly
and climb stairs did not amount to a substantial limitation on
the plaintiff's ability to walk).  Additionally, the inability to
walk long distances does not necessarily rise to the level of
substantial limitation.  *See Porch v. Dillard's Inc.*, 2004 WL
1809813, at *5 (N.D. Tx. Aug. 12, 2004)(finding that the
plaintiff was not substantially limited where the evidence showed

8

only that she was unable to stand all day or walk for long periods of time); *Martin v. Aimco Properties*, 2002 WL 1575411, at *2 (N.D. Tx. July 16, 2002)(finding that the plaintiff was not substantially limited in walking even though she walked with a slight limp and became fatigued at distances).

On the other hand, great difficulty in walking can rise to the level of a substantial limitation. *See McGarthy v. Ridge*, 2004 WL 1542161, at *4 (N.D. Tx. July 7, 2004)(finding that the plaintiff was substantially limited in walking where she had difficulty walking, even with assistive devices). For example, a person who required the use of a wheelchair was found to be substantially limited in walking. *Sapp v. MHI P'ship*, 199 F.Supp2d 578, 583 (N.D. Tx. 2002). Similarly, the caselaw indicates that a person who uses other assistive devices, such as a cane, can be substantially limited in walking. *Cf. McGarthy*, 2004 WL 1542161, at *4; *Gonzales v. Columbia Hosp. At Medical City Dallas Subsidiary*, 2002 WL 31245379, at *3-4 (N.D. Tx. Oct. 1, 2002)(finding a material issue of fact as to whether plaintiff was substantially limited in walking when, *inter alia*, the plaintiff walked with a cane).

Here, Barrios does not use a wheelchair or any other type of assistive device when she walks. (Def.'s Ex. A, Dep. of Barrios at 83.) In addition, Barrios's own testimony is a major obstacle

9

to summary judgment for the EEOC on the "substantially limiting"
issue.  For example, Barrios stated that she does not experience
shortness of breath when she walks short distances.  (Def.'s Ex.
A, Dep. of Barrios at 124.)  She asserts that she has never
stopped walking because she got short of breath or experienced
chest pains.  (Def.'s Ex. A, Dep. of Barrios at 124.)  She has
never held on to the walls to balance herself.  (Def.'s Ex. A,
Dep. of Barrios at 125.)  In the 18-year period that she worked
at DuPont, Barrios stated that she fell only once, and that was
when she slipped on her kitchen floor. (Def.'s Ex. A, Dep. of
Barrios at 151.)

Moreover, Barrios walks up the stairs of her porch to the
entrance of her home without assistance, and she walks around her
home. (Def.'s Ex. A, Dep. of Barrios at 100.)  When she worked
for DuPont, she walked down the hall to the printer and copier
every day, many times a day.  (Def.'s Ex. A, Dep. of Barrios at
94-5.)  She maintains that she could walk a block.  (Def.'s Ex.
A, Dep. of Barrios at 98.)  Barrios testified that during a visit
to the DuPont facility in 2003, she was able to walk at least
three "city blocks," and she successfully walked an evacuation
route that was approximately a quarter of a mile long.  (Def.'s
Ex. A, Dep. of Barrios at 98-100, 170-71; Pl.'s Tab H, Expert
Report of Kuylen at 11 (noting that she evacuated without

10

assistance); Def.'s Ex. B, Dep. of Kuylen at 59, 60; Pl.'s Tab C, Dep. of Ordeneaux at 197-98.)    Additionally, Barrios is able to go grocery shopping and run errands. (Def.'s Ex. A, Dep. of Barrios at 103, Pl.'s Tab H, Expert Report of Kuylen at 3.)

Barrios's own doctors indicate that she can walk short distances frequently. (Def.'s Ex. G, Dep. Of Palmer at 18; Def.'s Ex.B, Dep. of Jackson at 67.)    Dr. John Jackson, a neurologist who has treated Barrios, sees no reason why Barrios would fall from a neurologic standpoint. (Def.'s Ex. B, Dep. of Jackson at 67)    Indeed, "she has good strength in her legs.   I've tested that.   She has good reflexes."   (Def.'s Ex.B, Dep. of Jackson at 67.)    The foregoing evidence suggests a level of impairment that falls short of a substantial limitation in walking under the caselaw.

On the other hand, the facts that would clearly support a finding of a substantial limitation in walking come from DuPont's witnesses.    The DuPont physicians, Dr. Gene Burns and Dr. Stanislaus St. Martin, opine that Barrios cannot safely walk at all.    (See Def.'s Ex. A, Dep. of Barrios at 148; Def.'s Ex. K, Dep. of Burns at 19, 56, 57, 69-70; Pl.'s Tab L, Dep. of St. Martin at 16.)    Dr. St. Martin calls Barrios's walking impairment "[m]oderate to severe."   (Pl.'s Tab L, Dep. of St. Martin at 17.) Specifically, Dr. St. Martin maintains that Barrios is

substantially limited in her ability to walk in comparison to the average person. (Pl.'s Tab L, Dep. of St. Martin at 17.)

DuPont imposed a number of restrictions on Barrios's ability to walk and perform related tasks while at DuPont. Specifically, as of September of 1996, DuPont restricted Barrios from climbing stairs or straight ladders, standing for more than ten minutes at a time, and walking more than 100 feet without rest. (Pl.'s Tab C, Dep. of Ordeneaux at 56; Pl.'s Tab L, Dep. of St. Martin at 25; Def.'s Ex. A, Dep. of Barrios at 141.) Ultimately, DuPont restricted Barrios from walking anywhere on-site in July of 1999. (Def.'s Ex. K, Dep. of Burns at 18.) In explaining the walking restriction, Dr. Burns testified that "we were concerned" about Barrios's "basic walking skills." (Def.'s Ex. K, Dep. of Burns at 30.) In his opinion, Barrios "could not dependably be counted on to walk safely." (Def.'s Ex. K, Dep. of Burns at 57; *see also* Dep. of Burns at 71-72; Pl.'s Tab F, Aff. of Barrios at ¶ 7 (stating that on July 7, 1999, the plant physician told her that she was not safe to take one step on the plant site).)

Because the facts conflict as to the extent that Barrios was limited in her ability to walk, the Court denies summary judgment on the issue of whether she was actually disabled in walking.

(2) *Did DuPont Regard Barrios as Disabled in Walking?*

An employee may be disabled under the ADA when her employer

12

regards her as having a substantially limiting impairment. 42 U.S.C. § 12101(2)(C). To be "regarded as" disabled, the EEOC must show that (1) Barrios's impairment does not substantially limit her ability to walk, but (2) DuPont, nevertheless, treated her as though her impairment substantially limits her ability to walk. *See* 29 C.F.R. § 1630.2(l)(1);[1] *see also Deas v. River West, L.P.*, 152 F.3d 471, 480 (5th Cir. 1998)(determining what the employer's perception of the employee's limitation was, and whether that perception rose to the level of substantial limitation). For example, under the "regarded as" inquiry, an employer who "regards" an employee as substantially limited in walking would misperceive the employee's impairment to cause her great difficulty in her ability to walk. *Cf. McGarthy*, 2004 WL 1542161, at *4.

As determined, *supra*, genuine issues of fact preclude summary judgment on the first part of the "regarded as" inquiry, *i.e.* whether Barrios's impairment does or does not substantially limit her ability to walk. However, the Court finds that no issues of fact exist as to the second part of the "regarded as"

---

[1]An employee can also be "regarded as" disabled if she has an impairment that substantially limits major life activities only as a result of the attitudes of others toward such an impairment, or if she has no impairment at all but is treated by her employer as though she has a substantially limiting impairment. 29 C.F.R. 1630.2(l)(2)-(3).

13

inquiry.  On the discrete issue of whether DuPont treated

Barrios's impairment as a substantial limitation on her ability

to walk, the Court concludes that no reasonable juror could find

that DuPont did not.  Therefore, the Court grants summary

judgement to the EEOC on the discrete issue that DuPont--

correctly or incorrectly--treated Barrios as having an impairment

that substantially limited her ability to walk.

The evidence points ineluctably to this conclusion.  There

is no dispute that DuPont plant physicians act on behalf of

DuPont when they impose medical restrictions on DuPont employees.

(Pl.'s Tab C, Dep. of Ordeneaux at 51.)  The plant physicians

base medical restrictions on the employee's physical condition

and the doctors' best medical judgment.  (Pl.'s Tab C, Dep. of

Ordeneaux at 52, 53; Def.'s Ex. K, Dep. of Burns at 48.)  As

early as 1996, DuPont plant physician Dr. St. Martin medically

restricted Barrios's ability to walk.  Specifically, Dr. St.

Martin prohibited Barrios from walking more than 100 feet without

rest, standing for more than ten minutes at a time, and climbing

stairs or straight ladders.  (Pl.'s Tab C, Dep. of Ordeneaux at

52, 56; Pl.'s Tab L, Dep. of Dr. St. Martin at 12, 25.)

Significantly, Dr. St. Martin thought that Barrios was

substantially impaired in her ability to walk compared to an

average person.  (Pl.'s Tab L, Dep. of St. Martin at 17.)

14

Moreover, Dr. St. Martin thought Barrios should not have been able to work for DuPont in 1996 because of her inability to walk well. (Pl.'s Tab L, Dep. of St. Martin at 16.)  In his opinion, she should have retired. (Pl.'s Tab L, Dep. of St. Martin at 27.)

On July 7, 1999, DuPont physician Dr. Burns restricted Barrios from walking anywhere on the plant site. (Pl.'s Tab C, Dep. of Ordeneaux at 31, 47-49; Def.'s Ex. K, Dep. of Burns at 18-19; Def.'s Ex. J, Aff. of Ordeneaux at ¶ 4; Def.'s Ex. A, Dep. of Barrios at 148 (noting that Dr. Burns told her that he did not think she could walk on the plant site).)  Significantly, the restriction was not limited to rough terrain or sensitive manufacturing areas.  Instead, Barrios was restricted from walking onto the plant site, walking in her workspace, and walking away from the plant site.  (Def.'s Ex. K, Dep. of Burns at 56, 62-3.)  Dr. Burns's notes from July 7, 1999, are telling:

> Significant inability with walking noted.  Agreed that patient should not walk onto plant site.  Significant inability requires neurologist consult soon...  Also need further instruction on body mechanics...  Discussed with patient this a.m. importance of followup testing and risks of falls, treatment and nontreatment.  Should not be walking around on plant or standing.

(Def.'s Ex. K, Dep. of Burns at 18-19.)  Dr. Burns explained that "we were concerned" about Barrios's "basic walking skills." (Def.'s Ex. K, Dep. of Burns at 30.)  He believed that based on

15

the new inability revealed in her FCE, Barrios "could not

dependably be counted on to walk safely." (Def.'s Ex. K, Dep. of

Burns at 57; *see also* Dep. of Burns at 71-72; Pl.'s Tab F, Aff.

of Barrios at ¶ 7 (stating that on July 7, 1999, the plant

physician told her that she was not safe to take one step on the

plant site).) Dr. Burns noted that the therapist who conducted

the FCE "did mention marked inability [to walk] and that

basically she was a significant risk of falls wherever she was."

(Def.'s Ex. K, Dep. of Burns at 26.) Relatedly, Dr. Burns opined

that Barrios could stand safely for only "a very brief period of

time." (Def.'s Ex. K, Dep. of Burns at 57.) Dr. Burns noted

that Barrios would be "fine" working in a wheelchair or a golf

cart. (Def.'s Ex. K, Dep. of Burns at 61, 63.) But, he

indicated that Barrios might need assistance getting into and out

of a wheelchair or a golf cart. *Cf. Sapp*, 199 F.Supp.2d at 583

(finding that a plaintiff who uses a wheelchair is substantially

limited in walking); *cf. also McGarthy*, 2004 WL 1542161, at *4

(finding that a plaintiff use walks with difficulty with the use

of assistive devices is substantially limited in walking).

In addition to being completely restricted from walking on

the premises by DuPont, Barrios receives Total and Permanent

disability benefits from DuPont. Under the DuPont plan, "Total

and Permanent disability means you are *totally disabled* by injury

or disease and presumably are totally and permanently prevented from doing any gainful work, as determined by DuPont." (Pl.'s Tab B, DuPont Discovery Documents at 0258 (emphasis added); *see also* Def.'s Ex. H, Dep. of Gregg at 42, 43-44, 90, 91-92.) Barrios went on Total and Permanent disability because of her inability to walk. (Pl.'s Tab C, Dep. of Ordeneaux at 21, 22; *see also* Pl.'s Tab B, DuPont Discovery Response to the EEOC's First Set of Interrogatories 9 (stating that "Barrios... received a medical retirement for total and permanent disability due, in part, to the inability to walk").) DuPont forwarded Barrios's Total and Permanent disability application materials to its claims administrator, Aetna. (*See* Def.'s Ex. H, Dep. of Gregg at 35-6 (explaining that "an employee... who has a medical condition where our medical department has said that they have restrictions that are sufficiently limiting that they have the opportunity to apply for the T&P benefits, then our management will assistant [*sic*] them in an application").) Aetna, in turn, determined that Barrios was eligible for Total and Permanent disability "on DuPont's behalf." (Def.'s Ex. H, Dep. of Gregg at 92.) As with the permanent restriction on walking, Barrios's Total and Permanent disability status indicates that DuPont regarded Barrios as disabled. *Compare Talk*, 165 F.3d at 1025 (finding that because the employer actively sought alternate positions for

17

the employee, the employer did not regard the employee as disabled) *with Thompson v. E.I. DuPont de Nemours*, 140 F.Supp.2d 764, 772-73 (E.D. Mich. 2001)(noting that it would be difficult for DuPont to argue that the employee was not disabled because the employee was on Total and Permanent disability).

Additionally, DuPont and its representatives continually indicated in discovery responses, pleadings, and testimony that Barrios is substantially limited in walking. For example, in its statement of uncontested material facts, DuPont asserts that the FCE established that Barrios has "tremendous difficulty" walking. (Def.'s Statement of Uncontested Material Facts at ¶ 40.) DuPont's responses to the EEOC's interrogatories indicate that Barrios is completely disabled and requires the use of a wheelchair:

> **Interrogatory 9**
> Identify all persons whom DuPont has, from 1993 to the present, placed on total and permanent disability due to the inability to walk...
> **Response to Interrogatory No. 9**
> [O]ther than Ms. Barrios, no person employed at the DuPont facility in LaPlace, Louisiana, during the relevant time period has received a medical retirement for total and permanent disability due, in part, to the inability to walk.
>
> **Interrogatory No. 10**
> Identify all persons whom DuPont has hired since 1993 who were unable to walk or who used a wheelchair...
> **Response to Interrogatory No. 10**
> [N]o person has been employed at the DuPont facility in LaPlace Louisiana, during the relevant time period who

required the use of a wheelchair, except for Ms.
Barrios.

**Interrogatory No. 11**
Identify all persons who have since 1993 unsuccessfully
applied to work at DuPont and were either unable to
walk or used a wheelchair...
**Response to Interrogatory No. 11**
No person has sought employment, or been employed at
the DuPont facility in LaPlace, Louisiana, during the
relevant time period with such restrictions, except for
Ms. Barrios.

**Interrogatory No. 12**
Identify all persons employed by DuPont at the subject
facility who have, at any time since 1993, become
limited (temporarily or permanently) in their ability
to walk...
**Response to Interrogatory No. 12**
The only employee permanently disabled from walking
during the relevant time period was Ms. Barrios.

(Pl.'s Tab B, DuPont Discovery Responses to the EEOC's First Set

of Interrogatories 9, 10, 11, 12.)  DuPont's response to the

EEOC's request for admissions indicates the same:

**Request No. 40**
As of the time of Laura Barrios's last day of work at
DuPont, Defendant had determined that she was incapable
of walking on site.
**Response**
Denied as written.  Barrios' [*sic*] FCE established that
she was incapable of walking.

(Pl.'s Tab B, DuPont Discovery Responses to the EEOC's First Set

of Requests for Admissions 40.)  Moreover, DuPont and its

employees have expressed concerns about Barrios's difficulty

walking.  (Pl.'s Tab C, Dep. of Ordeneaux at 30, 147 (noting that

"[o]ne of the risks that DuPont has talked about at various

19

points is the risk that Laura Barrios might fall and injure herself"); Pl.'s Tab E, Dep. of Weidner at 68; Pl.'s Tab B, DuPont Discovery Documents, letter from Weidner to the EEOC at 0007 (stating that "[b]ased on observations by her immediate supervisor and others, a concern for Ms. Barrios' [sic] personal safety was again raised due to her instability. Specifically there was a concern of her falling and possibly injuring herself."); Def.'s Ex. J, Aff. of Ordeneaux at ¶ 18 (revealing that DuPont ordered Barrios to take an FCE only "after other employees had noticed Barrios' [sic] needing to brace herself against the walls as she walked down a hallway"), Pl.'s Tab C, Dep. of Ordeneaux at 25-26 (verifying that Barrios's FCE established that she was incapable of walking).[2] As with the permanent restriction on walking and her Total and Permanent disability status, the statements of DuPont and its employees indicate that DuPont perceived Barrios's impairment to substantially limit her ability to walk. Cf. McInnis v. Alamo Comty. Coll. Dist., 207 F.3d 276, 281-82 (5th Cir. 2000)(finding

---

[2]Shortly before Barrios left DuPont, Donna Negrotto, the plant nurse, suggested that Barrios get a walker. (Def.'s Ex. A, Dep. of Barrios at 79.) According to Barrios, Negrotto told her that a walker "would make it more easily explainable to people why I walked the way I do, that everybody can tell something is wrong with me, that if I had a walker, it would be easier for other people, that a walker would signify something, I guess." (Def.'s Ex. A, Dep. of Barrios at 79; see also 194.)

evidence that the college president referred to the employee's "handicap" and that the district's ADA compliance coordinator could tell from the employee's file that he was either disabled or regarded as disabled sufficient to raise an issue of fact as to whether the employer regarded the employee as disabled).

DuPont's only response to all of this evidence is that it did not intend to make a judgment about Barrios's general ability to walk when it permanently restricted her from walking anywhere on the plant site. Therefore, DuPont contends that it did not regard Barrios as disabled. (*See* Def.'s Ex. J, Aff. of Ordeneaux at ¶¶ 5-6.) In support of its response, DuPont cites to cases in which courts have held that the employer did not regard the employee as disabled simply because the employer was aware of the employee's impairment or aware of the employee's restrictions from performing a particular task. *See Pryor v. Trane Co.*, 138 F.3d 1024, 1025, 1028 (5th Cir. 1998)(noting that the evidence indicated that the employer did not regard the employee as disabled even though the employer knew of the employee's impairment and consequent limitations); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925 (7th Cir. 2001)(noting that employer did not regard employee as disabled simply because it knew he has Hepatitis B); *Krocka v. City of Chicago*, 203 F.3d 507, 514 (7th Cir. 2000)(finding that the employer did not regard the employee

as disabled simply because it knew of his depression and placed
him in a personnel monitoring program); *Harrington v. Rice Lake
Weighing Sys., Inc.*, 122 F.3d 456, 460-61 (7th Cir. 1997)(finding
that the employer's awareness of an employee's heavy lifting
restrictions following surgery did not show that the employer
regarded the employee as disabled). DuPont's conduct does not
fit the paradigm of the cited cases. This is not a case in which
the evidence in the record shows only that the employer is aware
of its employee's restriction from performing a discrete task,
like heavy lifting. Instead, DuPont restricted Barrios from
walking *anywhere on the plant site*, and walking itself is a major
life activity. *Compare Pryor*, 138 F.3d at 1025 (noting that the
employee was restricted from the discrete task of continuous,
repetitive lifting). Moreover, this is not a case in which the
only evidence in the record that could possibly indicate that the
employer regarded the employee as disabled consists of the
employer's simple knowledge of the employee's impairment.
*Compare Amadio*, 238 F.3d at 925. On the contrary, DuPont knew of
Barrios's impairment, DuPont affirmatively restricted her from
walking, DuPont facilitated her application for Total and
Permanent disability benefits, and DuPont repeatedly referred to
her as unable to walk or requiring the use of a wheelchair.

Moreover, DuPont begs the question when it contends that it

22

did not regard Barrios as disabled because it did not intend to
make a judgment about Barrios's ability to walk in general when
it permanently restricted her from walking on the plant site.
The question is, did DuPont treat Barrios's walking impairment as
substantially limiting?  The degree of the impairment that
DuPont's doctors found and the nature of the restriction DuPont
imposed on Barrios show that DuPont perceived Barrios's
impairment to be substantially limiting.  As noted, Dr. Burns did
not restrict Barrios from walking only on rough terrain,
inclines, or near sensitive manufacturing areas.  Instead, Dr.
Burns restricted Barrios from walking *anywhere on-site* and he
specifically said her impairment extends wherever Barrios is, "at
home, at work, wherever." (*See* Def.'s Ex. K, Dep. of Burns at
69.)  Significantly, Barrios's work area is made up of mostly
flat, smooth surfaces. (*See* Pl.'s Tab I, Expert Report of Stein
at 9 (noting that Barrios worked in a single-story building with
ground level entrances and exits, and the walkway and driveway
outside of the building is paved and level).)  If Barrios cannot
safely walk anywhere on the DuPont plant site, then she cannot
safely walk.  Indeed, Dr. Burns expressly refused to
compartmentalize Barrios's workplace restrictions and its
implications for her general ability to walk.  Instead, he noted
that "[t]he workplace isn't in a vacuum." (Def.'s Ex. K, Dep. of

23

Burns at 69.)  "This is not just a plant issue."  (Def.'s Ex. K,
Dep. of Burns at 68-70.)  The reason the restriction applied only
at work was because that was the only place DuPont had the
authority to restrict Barrios–not because DuPont regarded Barrios
as able-bodied when she left the plant premises.  (*See* Def.'s Ex.
K, Dep. of Burns at 68-70 ("My authority ends, even for a plant
physician, ends at the gate.  As a safety issue, she really
shouldn't be walking around."); Pl.'s Tab C, Dep. of Ordeneaux at
97 ("DuPont is concerned about employees' safety while at work.
They can't control my life beyond their property.").)

    In light of DuPont's medical restrictions on Barrios,
particularly DuPont's wholesale restriction prohibiting Barrios
from walking anywhere on its premises, Barrios's Total and
Permanent disability status on the DuPont disability plan, and
the statements of DuPont in pleadings and discovery, the Court
concludes that Dupont––correctly or incorrectly––treated
Barrios's impairment as a substantial limitation on her ability
to walk.  Accordingly, the Court grants the EEOC summary judgment
on the discrete issue of whether DuPont treated Barrios's
impairment as a substantially limitation her ability to walk.  As
noted *supra*, whether Barrios's impairment in fact substantially
limits her ability to walk is a question for the jury.

**B.    Prong 2: Was Barrios "Qualified"?**

Only "qualified individuals with disabilities" are entitled
to protection under the ADA.  42 U.S.C. § 12112(a).  A "qualified
individual" is an employee who can perform the "essential
functions" of her job "with or without reasonable accommodation."
42 U.S.C. § 12111(8).  The only "essential function" that DuPont
argues that Barrios could not perform was the alleged function of
evacuating the facility.  (*See* Pl.'s Tab C, Dep. of Ordeneaux at
29, 44; Pl.'s Tab E, Dep. of Weidner at 94.)  As a threshold
matter, however, the Court finds that an issue of fact exists as
to whether evacuating is an essential function of Barrios's job
as a lab clerk.

Duties that are fundamental to the job are its "essential
functions."  *See Kapche v. City of San Antonio*, 176 F.3d 840 (5th
Cir. 1999).  In contrast, essential functions do not include
"marginal" duties.  *See* 29 C.F.R. § 1630.2(n)(1).  Therefore,
only duties that are fundamental to Barrios's job of lab clerk
are its essential functions.  To determine whether a function is
essential, the Court should consider "the employer's judgment as
to what functions of the job are essential," and the employer's
written description of the job if the employer wrote the
description "before advertising or interviewing applicants for
the job."  42 U.S.C. § 12111(8).  *See also Giles v. General*

25

*Electric Co.*, 245 F.3d 474, 486 (5th Cir. 2001). Additionally, a job function could be essential if "(1) the purpose of the position is the performance of that function, (2) only a limited number of employees are available among whom the performance of that function can be delegated, or (3) an employee is hired because of [her] expertise or ability to perform a specialized function." *Kapche*, 176 F.3d at 843 (citing 29 C.F.R. 1630.2(n)(2)). The Court may also consider "the amount of time spent on the job performing the function,... the work experience of both past and current employees on the job," and the consequences of not requiring the employee to perform the function. *Kapche*, 176 F.3d at 843 (citing 29 C.F.R. § 1630.2(n)(3)(iii) and (vi)); 29 C.F.R. § 1630(n)(3)(iv).

The EEOC has pointed to significant evidence that evacuating is not an essential job function of a DuPont lab clerk. For example, evacuating is not listed in the lab clerk's job description. (Pl.'s Tab C, Dep. of Ordeneaux at 362; Pl.'s Tab B, DuPont Discovery Documents at 0375.) *See Giles*, 245 F.3d at 486 (upholding jury verdict because, *inter alia*, the task that the employee could not perform was likely not essential because it was not included in the job description); *Riel v. Electronic Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996)(finding an issue of fact existed as to whether a particular task was an

26

essential function of the plaintiff's job because the job description did not include it). Additionally, evacuation is rarely--if ever--required. (Pl.'s Tab H, Expert Report of Kuylen at 12 (stating that evacuation is rarely required).) Notably, Barrios never had to evacuate in 18 years at DuPont. (Def.'s Ex. A, Dep. of Barrios at 168; Pl.'s Tab C, Dep. of Ordeneaux at 71, 73, 130, 144.)

Moreover, the lab clerk position does not exist to perform the function of evacuating. (Pl.'s Tab C, Dep. of Ordeneaux at 141; Def.'s Ex. D, Dep. of Kuylen at 98; Pl.'s Tab H, Expert Report of Kuylen at 12.) *Compare Robertson v. The Neuromedical Center*, 161 F.3d 292, 295 (5th Cir. 1998)(finding that the duty of a neurologist to analyze tests and bloodwork was an essential function of his job because, *inter alia*, it was "one of the major reasons why his position existed in the first place"). Barrios was not hired for expertise in evacuating, and evacuation is not highly specialized. (Pl.'s Tab C, Dep. of Ordeneaux at 142; Def.'s Ex. D, Dep. of Kuylen at 99; Pl.'s Tab H, Expert Report of Kuylen at 12.) Additionally, the responsibility of evacuating can be distributed to other employees. (Pl.'s Tab C, Dep. of Ordeneaux at 141.) *Compare Robertson*, 161 F.3d at 295 (finding that the duty of a neurologist to analyze tests and bloodwork was an essential function of his job because, *inter alia*, the ability

27

to do so is highly specialized and cannot be distributed to others).

DuPont's witnesses, on the other hand, testified that evacuation is an essential function of the job of a lab clerk, as it is for all other plant employees, because of the nature of its chemical plant operations and the danger of hazardous gas emissions. (*See* Pl.'s Tab B, DuPont Discovery Responses at 0842 (noting evacuation in the description of job requirements in a letter to Aetna); Pl.'s Tab C, Dep. of Ordeneaux at 129-30, 142 (calling evacuation an "essential function of every position in the company"); Pl.'s Tab D, Dep. of Internicola at 74-5 (testifying that safe evacuation is an essential function of every position).) The Court cannot disregard evidence of DuPont's view of what constitutes the essential functions of the job--especially when the employer's judgment is one of the two factors that the statute requires the Court to consider. *See* 42 U.S.C. § 12111(8). Therefore, the Court concludes that an issue of fact exists as to whether evacuating is an essential function of the job of a DuPont lab clerk. Consequently, there is an issue of fact as to whether Barrios is "qualified."

   C.    **Prong 3: Did Barrios Suffer an Adverse Employment Action Because of her Disability?**

Because an issue of fact exists as to whether Barrios is

28

qualified, the Court denies summary judgment on the issue of whether Barrios suffered an adverse employment action because of her disability.

## IV.  DUPONT'S AFFIRMATIVE DEFENSE

The ADA prohibits an employer from using qualification standards that screen out or tend to screen out a disabled individual or a class of disabled individuals. *Equal Employment Opportunity Comm. v. Exxon Corp.*, 203 F.3d 871, 872 (5th Cir. 2000)(citing 42 U.S.C. § 12112(b)(6)).  An employer may, however, raise an affirmative defense to a charge of discrimination under the ADA.  Specifically, an employer may impose a qualification standard that is job-related and consistent with business necessity.  42 U.S.C. § 12113(a).

A qualification standard "may include a requirement that an individual shall not pose a direct threat to the health or safety of" herself or others in the workplace.  *See* 42 U.S.C. § 12113(b); *Echazabel*, 536 U.S. 73 (concluding that the direct threat to self regulation was a reasonable exercise of the EEOC's authority).  Direct threat means "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation."  42 U.S.C. § 12111(3).  The determination that an employee poses a direct threat to herself or others "shall be based on an individualized assessment of the

29

person's 'present ability to safely perform the essential
functions of the job.'" *Kapche*, 176 F.3d at 844 (quoting 29
C.F.R. § 1630.2(r)).  The Court should consider the duration of
the risk, the nature and severity of the potential harm, the
likelihood that the potential harm will occur, and the imminence
of the potential harm in assessing whether an employee poses
direct threat to herself or others in the workplace.  29 C.F.R. §
1630.2(r).

DuPont asserts that the ability to ambulate in the event of
an emergency evacuation is a qualification standard that it
imposes on all of its employees at the plant site. (Def.'s Ex. J,
Aff. of Ordeneaux at ¶¶ 16, 19.)  This is because the risk of a
chemical explosion at a chemical manufacturing plant is constant
and life-threatening.  (Def.'s Ex. J, Aff. of Ordeneaux at ¶ 14.)
Additionally, evacuees may have to alter their course of
evacuation rapidly depending on the wind direction.  (Def.'s Ex.
J, Aff. of Ordeneaux at ¶ 10.)  DuPont argues that Barrios failed
to meet the standard in light of her medical restriction from
walking.  DuPont concluded that Barrios posed a "direct threat"
to herself because she was unable to safely walk on the plant
site and thus to evacuate in the event of an emergency.

The Court finds that issues of fact preclude summary
judgment to either party on the direct threat defense.  As a

30

threshold matter, the Court finds that there is an issue of fact as to whether the ability to evacuate is a qualification standard that DuPont actually applies to all of its employees. Ordeneaux attested in his affidavit that it is, in fact, required of all employees. (Def.'s Ex. J, Aff. of Ordeneaux at ¶ 16.) Nevertheless, there is no identifiable written policy that requires that all employees be able to evacuate. (Pl.'s Tab C, Dep. of Ordeneaux at 15.) Additionally, as early as September of 1996, Dr. St. Martin considered Barrios unable to evacuate because of her walking impairment. (Pl.'s Tab L, Dep. of St. Martin at 29-31.) He appraised DuPont management of his concern. (Pl.'s Tab L, Dep. of St. Martin at 34.) Despite Dr. St. Martin's concern, DuPont employed Barrios for the next two and a half years. This suggests that DuPont did not treat the ability to evacuate as a qualification standard. Moreover, there were several employees at DuPont who were more impaired in their ability to walk than Barrios was at various periods of time. (*See* Pl.'s Tab C, Dep. of Ordeneaux at 177-84.) Despite their inability to evacuate, DuPont did not disqualify any of those employees from working while they were impaired. (Pl.'s Tab C, Dep. of Ordeneaux at 177-84.) These circumstances also suggest that DuPont did not actually impose the alleged qualification standard.

31

There is also an issue of fact as to whether Barrios posed a direct threat. (*See* Pl.'s Tab C, Dep. of Ordeneaux at 131.) For example, Dr. Burns testified that one of his primary concerns was Barrios's ability to evacuate--especially in the context of a plant that manufactures hazardous chemicals. (Def.'s Ex. K, Dep. of Burns at 70.) On the other hand, based on the experience of the last 18 years, the likelihood that Barrios will ever have to evacuate the DuPont facility is small. (*See* Pl.'s Tab C, Dep. of Ordeneaux at 69; Def.'s Ex. A, Dep. of Barrios at 168.) The risk that Barrios poses is not imminent. (Pl.'s Tab C, Dep. of Ordeneaux at 133.) Moreover, the evidence conflicts as to whether Barrios can safely evacuate. (*Compare* Def.'s Ex. A, Dep. of Barrios at 98-100, 170-71; Pl.'s Tab H, Expert Report of Kuylen at 11 (noting that she evacuated without assistance); Def.'s Ex. B, Dep. of Kuylen at 59, 60; Pl.'s Tab C, Dep. of Ordeneaux at 197-98 *with* Def.'s Ex. K, Dep. of Burns at 30 (explaining that "we were concerned" about Barrios's "basic walking skills"); Def.'s Ex. K, Dep. of Burns at 57 (opining that Barrios "could not dependably be counted on to walk safely"); Dep. of Burns at 71-72.)

Finally, to prevail on its affirmative defense, DuPont must show that any threat Barrios may have posed could not be eliminated by reasonable accommodation. The employee bears the

32

initial burden to notify her employer of her disability and to propose reasonable accommodations. *See Taylor v. Principal Financial Group*, 93 F.3d 155, 165 (5th Cir. 1996) (*citing* 29 C.F.R. § 1630.9, App. (1995)). Here, DuPont was aware of Barrios's impairment. Once the employee requests an accommodation, the employee and employer share the burden of crafting a reasonable accommodation through a flexible, interactive process. *See id; see also* 29 C.F.R.§ 1630.9. If the employer does not engage in a good faith interactive process, and this intransigence leads to a failure to reasonably accommodate an employee, the employer violates the ADA. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)(*citing Taylor v. Phoenixville School Dist.*, 174 F.3d 142, 165 (3rd Cir. 1999)).

There are issues of material fact as to whether DuPont considered reasonable accommodations. Ordeneaux testified that DuPont considered, and rejected, the possibility of a wheelchair. (Pl.'s Tab C, Dep. of Ordeneaux at 93.) Ordeneaux also testified that DuPont discussed accommodating Barrios more than once. (*See* Def.'s Ex. J, Aff. of Ordeneaux at ¶ 17; Pl.'s Tab C, Dep. of Ordeneaux at 94, 228.) On the other hand, Barrios testified that her attempts to find reasonable accommodations fell on deaf ears. (*See* Pl.'s Tab F, Aff. of Barrios at ¶¶ 10-13.) Additionally, plant manager Joe Internicola has no recollection of any

33

discussions about accommodating Barrios.  (Pl.'s Tab D, Dep. of
Internicola at 15-16, 26-8, 40-7, 58.)    Therefore, an issue of
fact exists as to whether DuPont tried to reasonably accommodate
Barrios such that she did not pose a direct threat to herself.

    For the foregoing reasons, the Court denies summary judgment
to both parties on the direct threat defense.

**V.    THE FUNCTIONAL CAPACITY EVALUATION**

    The EEOC also argues that DuPont violated the ADA in
ordering Barrios to participate in the FCE.  The ADA provides
that an employer:

> shall not require a medical examination and shall not
> make inquiries of an employee as to whether such
> employee is an individual with a disability or as to
> the nature or severity of the disability, unless such
> examination or inquiry is shown to be job-related and
> consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).  On the other hand, the ADA does not
prohibit such exams when they are job-related and consistent with
business necessity.  *Id.* at § 12112(d)(4)(B).  *See also Fuzy v.
S&B Engineers & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir.
2003)(noting that weight lifting test was job-related and
therefore permitted under the ADA); *Watson v. City of Miami
Beach*, 177 F.3d 932, 935 (11th Cir. 1999)(finding that police
department did not violate ADA when it required officer to
undergo fitness for duty examination when he had a history of

34

paranoia and overreaction); *Equal Employment Opportunity Comm'n v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998)(finding that inquiry into employee's HIV status did not violate the ADA where the employee worked in the produce department of a grocery store where employees were prone to cuts). A post-hiring demand for an examination is justified only when there is significant evidence that could cause a reasonable person to doubt whether an employee can perform her job-related functions. *See Sullivan v. River Valley School Dist.*, 197 F.3d 804, 811 (6th Cir. 1999).

First, the Court must determine whether the FCE is a disability-related inquiry. *See Conroy v. New York State Dep't of Correctional Svs.*, 333 F.3d 88, 96 (2d Cir. 2003)(considering whether the inquiry was a disability-related inquiry and therefore within the general prohibition of the ADA). As the FCE probed Barrios's physical ability to, *inter alia*, walk, stand, and climb, it would reveal the nature and severity of her disability. Therefore, FCE is within the ADA's general prohibition on medical exams that tend to reveal the nature and severity of an individual's disability.

The Court, however, finds that issues of fact exist as to whether DuPont was justified in ordering the FCE. DuPont states that the FCE was ordered because employees reported that Barrios

35

"brac[ed]" the walls as she walked down the hallways. (Def.'s Ex. J, Aff. of Ordeneaux at ¶ 18.) According to DuPont, this raised doubts as to whether Barrios was fit for duty. Barrios, on the other hand, testified that she has never held onto the walls to assist her in walking. (Def.'s Ex. A, Dep. of Barrios at 125.) Therefore, the factual basis for the FCE is in dispute.

Moreover, the Court finds that issues of fact exist as to whether the FCE, as performed, was job-related and consistent with business necessity. According to Barrios, the FCE had nothing to do with her job. (Def.'s Ex. A, Dep. of Barrios at 88.) Her job was sedentary, and the FCE was "a very endurance type physical capacity test." (Def.'s Ex. A, Dep. of Barrios at 88.) Significantly, the FCE tested Barrios's ability to engage in activities from which DuPont had permanently restricted her. (Pl.'s Tab F, Aff. of Barrios at ¶ 5, 6; Pl.'s Tab B, DuPont Discovery Documents at 0383, 0384.) Barrios's job description in her FCE file contains a fax date that is *after* the date on which she took the FCE. (Pl.'s Tab B, DuPont Discovery Documents at 0375.) Additionally, the doctor who ordered the FCE cannot recall ever seeing Barrios's job description. (Def.'s Ex. K, Dep. of Burns at 31, 45-46.)

On the other hand, Dr. Burns testified that the FCE was to provide information concerning whether the employee could perform

her job duties, including whether the employee could safely evacuate in an emergency.  (Def.'s Ex. K, Dep. of Burns at 72.)

Accordingly, the Court denies both parties' motions for summary judgment on the issue of whether the FCE was illegal under the ADA.

## V.    CONCLUSION

For the above reasons, the Court GRANTS the EEOC's motion in part and DENIES it in part.  Furthermore, the Court DENIES DuPont's motion.

New Orleans, Louisiana, this 15th day of October, 2004.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE